436 Mich. 386 (1990)
461 N.W.2d 671
In re MACOMBER
KENT COUNTY DEPARTMENT OF SOCIAL SERVICES
v.
MACOMBER
Docket No. 86646, (Calendar No. 7).
Supreme Court of Michigan.
Argued April 4, 1990.
Decided September 26, 1990.
Frank J. Kelley, Attorney General, William A. Forsyth, Prosecuting Attorney, and Timothy K. McMorrow, Chief Appellate Attorney, for the petitioner.
N. Garth Petersen for the respondent-appellee.
Amici Curiae:
Paul N. Baker for the Juvenile Law Section of the State Bar of Michigan.
Donna T. Morris for the Michigan Probate Judges Association.
RILEY, C.J.
The Legislature has given a broad grant of authority to the probate court to protect children who come within its jurisdiction.
We disagree with the reading of chapter XIIA of the probate code by the dissent to the extent it would limit the authority of the probate court to those orders expressly listed in § 18. Our reading of the provisions granting and describing the jurisdiction of the probate court persuades us that probate court power extends beyond § 18.
The jurisdiction of the probate court, a court of limited jurisdiction, is defined by the Legislature. MCL 600.847; MSA 27A.847 provides in pertinent part:
In the exercise of jurisdiction vested in the probate court by law, the probate court shall have the same powers as the circuit court to hear and determine any matter and make any proper orders *390 to fully effectuate the probate court's jurisdiction and decisions.
To determine the breadth of the power granted to the probate court by chapter XIIA of the Probate Code, the "jurisdiction vested in the probate court by law" must be delineated.
Fairly characterized, the paramount purpose of the juvenile section of the Probate Code is to provide for the well-being of children. To this end, MCL 712A.1(2); MSA 27.3178(598.1)(2) provides:
This chapter shall be liberally construed to the end that each child coming within the jurisdiction of the court shall receive the care, guidance, and control, preferably in his or her own home, as will be conducive to the child's welfare.... [Emphasis added.]
In 1944, in a further move to provide for the well-being of children coming within the jurisdiction of the court, the Legislature enacted § 6 of chapter XIIA, which states:
The juvenile division of the probate court shall have jurisdiction over adults as hereinafter provided and may make such orders affecting adults as in the opinion of the court are necessary for the physical, mental, or moral well-being of a particular child or children under its jurisdiction: Provided, That such orders shall be incidental to the jurisdiction of the court over such child or children. [MCL 712A.6; MSA 27.3178(598.6). Emphasis added.]
A plainer, more straightforward statement of *391 the authority conferred on the probate court to fashion necessary orders to protect children who come within its jurisdiction would be difficult to imagine.
We are persuaded that this section provides clear authority for the court to make orders which are necessary for the well-being of a child. The dissent interprets the phrase that the court has "`jurisdiction over adults as hereinafter provided'" to limit jurisdiction over adults to the orders in § 18. Post, p 412. However, in reaching this conclusion, the dissent ignores the word "and" after "hereinafter provided." Thus, contrary to the view expressed by the dissent, we conclude that the probate court has "`jurisdiction over adults as hereinafter provided and may make such orders affecting adults as ... are necessary for the physical, mental, or moral well-being of a particular child.'"[1] (Emphasis added.)
Section 18 of chapter XIIA was enacted at the same time as § 6. Thus, it is fair to say that the Legislature intended the two sections to be interpreted consistently with each other. The appellee's arguments that § 18 was later amended to exclusively limit the court's power to § 18, and that the specific nature of the orders in § 18 negates the broad grant of power in § 6 are not persuasive.
We find nothing in the 1972, 1982, or 1988 amendments to support these arguments. The amendments did not alter the meaning of the section to exclusively limit the court's power to *392 § 18.[2] Since the amendments of § 18 did not alter the meaning of the section to specifically provide for exclusivity, § 6 and § 18 are still to be considered consistent as the Legislature intended in 1944. Another indication that § 18 is to be read in light of § 6 are the words "as hereinafter provided" in the latter section. By acknowledging other relevant provisions in § 6, we conclude that the Legislature has clearly indicated its intent that the related sections be interpreted consistently with each other rather than intending that one section override the other.[3]
In the instant case, while § 6 provides strong support for the orders given in the probate court, § 18 can also be read to justify the probate court's orders. Section 18(1)(b) authorizes an order placing a child under supervision in the child's own home:
Place the child on probation, or under supervision in the child's own home or in the home of an adult who is related to the child.... The probation or supervision shall be upon such terms and conditions, including reasonable rules for the conduct of the parents, guardian, or custodian, if any, designed for the physical, mental, or moral well-being and behavior of the child, as the court determines. [Emphasis added.]
*393 In addition, § 18(1)(g) provides:
Order the parents ... to refrain from continuing conduct which ... has caused or tended to cause the child to come within or to remain under this chapter....
In analyzing the foregoing sections, it is significant to note that these dispositional orders are stated in broad, general terms. The court may provide "reasonable rules for the conduct of the parents [designed for the well-being of the child]." Also, the court may order parents to discontinue conduct which, "in the opinion of the court," causes a child to come within the court's jurisdiction. Thus, we hold that the Legislature has conferred very broad authority to the probate court. There are no limits to the "conduct" which the court might find harmful to a child. The Legislature intended that the court be free to define "conduct" as it chooses. Moreover, in light of the directive that these provisions are to be "liberally construed" in favor of allowing a child to remain in the home, we find these sections supportive of the court's order prohibiting the father from living with his daughter. The court could have found that the conduct which "tended to cause" the daughter's sexual victimization was the proximity of the father to the daughter. Thus, the court could order the father to refrain from conducting himself, at all, in the presence of the child.
Certainly, the immediate conduct which "caused" the child to come within the jurisdiction of the court was the sexual behavior of the father. However, the court could well have found that such an order prohibiting the father from touching his daughter may not have been effective in assuring the safety of the child. However, it is not only conduct which immediately "causes" the abuse which can be prohibited, but also conduct which *394 tends to cause the abuse. The court could properly find that the living arrangements, father and daughter under the same roof, tended to cause, or led to the misconduct.
Although the dissent would find that the probate court did not have the authority to order the appellee to support his family, it states that "[s]ection 18 spells out the kinds of orders that the probate court is authorized to enter...." Post, p 412 (emphasis added). This statement seems to contemplate that the authority extends beyond the four corners of § 18. Yet, despite the dissent's acknowledgment that § 18 represents the "kinds of orders" allowable, it does not find the support order proper. We do not agree.
Sections 18(2) and 18(3) provide that the court may order reimbursement by a parent to the court for the costs of services and care to a child. While § 18(2) concerns costs for placement outside of the home, § 18(3) concerns reimbursement for costs incurred by a child in the child's own home. Certainly, these were the "kinds of orders" which were issued in this case. Under §§ 18(2) and 18(3), a court can take jurisdiction of a child, incur costs in caring for the child, and order a parent to reimburse for those costs. The order in this case is similar in that it ordered a parent to provide financial support for the family. Both orders direct a parent to pay for the care of a child within the jurisdiction of the court.
There is evidence in other sections of chapter XIIA that the Legislature intended to give the probate court broad powers and flexibility in providing for the well-being of children. Section 18f(2) directs agencies to write case service plans for the use of the court and the parties. Section 18f(3)(b) states that case service plans shall include "[e]fforts to be made by the child's parent[s] to enable *395 the child to return to his or her home." Under § 18f(4), "[t]he court may order compliance with all or any part of the case service plan as the court considers necessary." (Emphasis added.)
Thus, under § 18 the court may order parents to refrain from conduct, or to act affirmatively, in the interest of the child. Under § 18f(3)(b), case service plans are to include efforts by the parents to enable a child to return home. An effective "effort" in this regard might consist of outside counseling or therapy aimed at reforming an abusive parent.[4] Under § 18f(4), a probate court may order compliance with the plan if considered necessary, and lawfully regulate a parent's activity outside of the home.[5]
Under MCL 712A.19b; MSA 27.3178(598.19b), the probate court has power to terminate parental rights:

*396 (3) The court may terminate the parental rights of a parent to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
* * *
(b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under either of the following circumstances:
(i) A parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home.
Section 19 authorizes the drastic measure of terminating parental rights. Nevertheless, the dissent is reluctant to acknowledge authority in the probate court to implement harsh measures affecting adults. In light of § 19, it is inconsistent for the dissent today to urge an interpretation of this legislation which denies the court the authority to tailor remedies which fall short of terminating parental rights and which are necessary for the well-being of a child.
Further evidence of past interpretation by this Court of chapter XIIA can be found in the Michigan Court Rules. MCR 5.965(B)(10) provides:
If the court authorizes the filing of the petition as provided in subrule (B)(9), the court may release the child to a parent or the court may place the child with someone other than a parent as provided in subrule (C). Release of the child to a parent following the authorization of a petition may be accompanied by reasonable terms and conditions believed necessary to protect the physical health or mental well being of the child. [Emphasis added.]
Again, we note that "reasonable terms and conditions *397 believed necessary" is broad and expansive language. Moreover, MCR 5.965(C)(2) discusses the three prerequisites to releasing a child to someone other than a parent:
(a) custody of the child with the parent presents a substantial risk of harm to the life, physical health, or mental well being of the child;
(b) no provision of service or other arrangement except removal of the child is reasonably available to adequately safeguard the child from the risk as described in subrule (C)(2)(a); and
(c) conditions of child custody away from the parent are adequate to safeguard the health and welfare of the child.[[6]]
The complicated problem posed by this case is underscored by this section. While all these criteria apply with regard to the father, none exist as to the mother. When issuing its order, the probate court gave due regard to both the supportive mother/daughter relationship, and the abusive father/daughter relationship. It certainly would have been unfair to the victim, and irresponsible given the historic purpose of this legislation, to have removed her from her mother, brother, and home environment because of her father's abusive behavior.
Finally, MCR 5.973(A)(5)(b) discusses dispositional orders:
The court shall not enter an order of disposition until it has examined the case service plan as provided in MCL 712A.18f; MSA 27.3178(598.18f). The court may order compliance with all or part of the case service plan and may enter such orders as *398 it considers necessary in the interest of the child. [Emphasis added.]
Again, the broad language of this court rule does not expressly limit permissible orders to § 18, but construes the code to allow orders which are "necessary" for the child's best interest.
We are persuaded that to interpret the Juvenile Code only to authorize the dispositional remedies expressly provided in § 18 would severely limit the probate court's effectiveness in providing for the well-being of children. To be sure, situations will arise which call for creative solutions, not contemplated by the Legislature in § 18. To its credit, the Legislature recognized this need. The probate court should have the flexibility to tailor orders to remedy the complicated and myriad problems posed by abusive family relationships. It is reasonable to contemplate scenarios, much like this one, where a court reasonably believes a parent's daily proximity to a child "tends to cause" the abuse. It is also reasonable to contemplate scenarios where the home is rendered unfit by the actions of one parent.
The Legislature granted the probate court the needed flexibility in § 6. Sections 6 and 18 were enacted at the same time, the presumption being that they are to be read in light of each other. Section 6 states clearly that orders may be implemented which are "necessary" for the well-being of a child. There is further support in §§ 18f, 19b, and the court rules that the probate court is so empowered.
With all due respect, we believe that the dissent's concern about the breadth of this grant of power is exaggerated. While the language is broad, it provides sufficient guidance and needed flexibility to the court. The court is limited in that it can *399 only act after it has jurisdiction over a child, and it may only act to ensure a child's well-being. Any orders aimed at adults must also be incidental to the court's jurisdiction over children. In addition, under § 6, the court may only make orders affecting adults if "necessary" for the child's interest. The word "necessary" is sufficient to convey to probate courts that they should be conservative in the exercise of their power over adults. Furthermore, upon review of an order affecting adults, if an appellate court finds the factual record insufficient to justify the "necessity" of the order, it may overturn the order as clearly erroneous.
In this case, the record was sufficient to support the court's orders. A jury determined that the father had sexually abused the daughter in the past, and his behavior indicated a likelihood of similar conduct in the future. In contrast, the child's relationship with the mother was healthy. Given the objective of the act that provisions should be liberally construed in favor of keeping children at home, it was reasonable for the court to determine it was necessary to remove the father from the home and order him to pay support.
While we disagree with the dissent regarding the probate court's post-trial authority, we find that the pretrial order prohibiting the father from living at home was improper.
Under § 6, the court cannot act to issue "orders affecting adults" until it has acquired jurisdiction of a child. With regard to jurisdiction, MCR 5.973(A) provides:
General. A dispositional hearing is conducted to determine measures to be taken by the court with respect to the child properly within its jurisdiction and, when applicable, against any adult, once the court has determined following trial, plea of admission, *400 or plea of no contest that the child comes within its jurisdiction. [Emphasis added.]
Along the same line, the staff comment on the court rules states:
It is unclear whether the Legislature intended to authorize the court to order parents to comply with the "initial service plan" at the pretrial stage. Traditionally, a court would not order the parent to comply with a case service plan before it has assumed jurisdiction over the child. [Mich Ct R, p R 5-88.]
There is no general statutory authorization for referees or judges to make dispositional orders prior to trial. Furthermore, ordering a father out of his home absent a trial raises potential due process implications.
The decision of the Court of Appeals is reversed to the extent it found that the probate judge exceeded his authority in the issuance of post-trial orders.
BRICKLEY, BOYLE, ARCHER, and GRIFFIN, JJ., concurred with RILEY, C.J.
CAVANAGH, J., concurred in the result only.
LEVIN, J. (to affirm).
The questions presented are whether the probate court has authority to order a parent out of the family home and to pay support for the family.[1] The Court of Appeals[2] held that it did not. I agree and would affirm.
I
A teenage girl, then sixteen, came to the attention *401 of the probate court in January, 1987. A caseworker for the Department of Social Services reported that she said that when she was approximately nine years old, her father, Harold Macomber, had repeatedly, for approximately one year, forced her to disrobe, fondled her body as they lay in bed together nude, and that he had penetrated her vagina digitally. She further reported that six years later, beginning in the fall, 1986, her father had begun making sexual advances to her by rubbing her breasts, buttocks, vagina, and thighs while she was fully clothed.
A preliminary hearing was scheduled before a judge.[3] A referee conducted the hearing on January 23, 1987. After hearing testimony from the caseworker, Harold Macomber, his wife Lucille, the daughter, and an older brother, the referee reported that he found probable cause to believe that the allegations of abuse were true as well as the daughter's fear that her father would "go further." The referee added that the daughter had talked to her brother and then her mother the previous Friday, January 16, 1987. The brother, twenty years old, said that he also had been sexually molested by Harold Macomber. Lucille Macomber said that she believed the allegations. Harold Macomber denied any and all wrongdoing.
The referee authorized the filing of a petition, and ordered that the daughter be placed under the supervision of the DSS in the care of her mother. He also ordered that, pending such hearing, Harold Macomber shall not reside in the family home *402 and shall have no direct contact with the daughter without written permission of the DSS.
Harold Macomber moved out of the family home pursuant to the order. He apparently provided for the support of his family without a court order; no support order was entered until after the adjudication that the daughter was within the jurisdiction of the court. An attorney entered an appearance for Harold Macomber on February 3, 1987. The attorney filed a number of motions including one to set aside the "Order of Disposition." At the hearing on that motion, a question was raised concerning the referee's authority to enter a preadjudication order requiring a father to vacate his home and refrain from having communication with his daughter.
The judge did not address the referee's authority, but focused, rather, on his authority under § 6 of chapter XIIA,[4] captioned Juveniles and Juvenile Division, of the Probate Code:[5]
The juvenile division of the probate court shall have jurisdiction over adults as hereinafter provided and may make such orders affecting adults as in the opinion of the court are necessary for the physical, mental, or moral well-being of a particular child or children under its jurisdiction: Provided, That such orders shall be incidental to the jurisdiction of the court over such child or children. [MCL 712A.6; MSA 27.3178(598.6).]
The judge concluded that the court's authority concerning adults, set forth in § 6, "applies both before and after adjudication for instances such as *403 this where there needs to be some temporary, even preadjudicative order over adults if the court finds such is necessary for the physical, mental or moral well-being of a child." The judge announced that he would "reenter" the order previously entered by the referee, and did so on March 19, 1987. The judge did not address the scope of the court's authority concerning adults.
In April, 1987, on evidence tending to support the allegations in the original complaint and subsequently filed petition, the jury "adjudicated" that the probate court had jurisdiction of the daughter. An interim order was entered making the daughter a temporary ward of the court, allowing her to continue to live with her mother, and continuing the order that Harold Macomber remain out of the home. Harold Macomber was directed to pay $180 per week for the support of his family and to attend counseling.
Following a June 30, 1987, dispositional hearing, the judge entered an order continuing the daughter as a temporary ward of the court and continuing the reference to the DSS for supervision in the home of her mother, and, finding that it is "necessary for the physical, mental or moral well-being of [the daughter]," ordered that Harold Macomber should:
(1) ... not have any direct, indirect, in person, verbal, written, by phone, by mail, or any other means of contact with said child or Phillip and Lucille Macomber without written authorization from the [DSS] or the court.
(2) ... attend counseling and the "Parents Who Care" support group meetings as required by Wanda Carter-Smith or any replacement caseworker at the YWCA-Child Sexual Abuse Center.
(3) ... pay directly to Lucille Macomber, mother, $180.00 per week for the support of the *404 family; Provided, that this support shall be reduced by $36.00 for each day that said father does not work and is not paid.
Pursuant to the order, the matter was reviewed and reevaluated by the judge semiannually beginning in December, 1987. On November 17, 1988, the judge ordered the daughter discharged as a temporary ward of the court[6] on the basis that a judgment of divorce dissolving the marriage of Lucille and Harold Macomber had been entered and the judge's finding that the daughter was not at risk because Harold Macomber is no longer in the home.[7]
Harold Macomber was acquitted in circuit court, in July, 1987, of a charge of second-degree criminal sexual conduct[8] arising out of the allegations of the daughter.
The Court of Appeals first addressed but declined to decide whether the juvenile division of the probate court had jurisdiction because, it said, the record was unclear when the petition was served or filed, adding that there were other grounds for reversal.[9]
*405 The Court of Appeals began its dispositive analysis with a reference to Const 1963, art 6, § 15, which provides that "`[t]he jurisdiction, powers and duties of the probate court and of the judges thereof shall be provided by law.'" (Emphasis added.) The Court added that "[t]he probate court has no inherent powers. Its right to take jurisdiction of children and to govern their lives is based entirely on constitution and statute."[10]
The Court considered § 6, conferring "jurisdiction over adults" in the juvenile division of the probate court and empowering the court to make "orders affecting adults," and nevertheless concluded that the probate court exceeded its power when it entered the order requiring Harold Macomber to leave the family home and to pay $180 per week to support his family.[11]
II
The DSS, recognizing that the probate court has *406 no inherent powers, and can act only as authorized by statute, relies in part on § 1(2) of chapter XIIA, providing that the "chapter shall be liberally construed to the end that each child coming within the jurisdiction of the court shall receive the care, guidance, and control, preferably in his or her own home, as will be conducive to the child's welfare and the best interest of the state."[12]
The DSS argues:
The Probate Court has the power to, under appropriate standards, terminate parental rights in children. The Court has the power to make a child a ward of the Court and put the child in foster care. Surely the Court must have the power to take steps to insure that a child receives care, guidance and control in her own home, by removing from the home the source for the Court to have exercised jurisdiction in the first place. The Court of Appeals opinion in this case will severely restrict a legitimate power of the Probate Court. Under the Court of Appeals analysis, a Probate Court confronted with a sexually abusive father would lack the power to remove the father from the home, but would either have to take the terrible chance that the sexual abuse would occur again, or take the severe step of removing the innocent child from the home. We submit that the Legislature could not have intended to leave the Probate Court with this Hobson's choice.
The probate court, all agree, is a court of limited, statutorily prescribed authority. Section 18 of *407 chapter XIIA[13] provides for the "disposition" of a child who has been adjudicated to be within the jurisdiction and authority of the court. The probate court has a number of, but not unlimited, options under § 18. While there may be good and sufficient policy reasons that would support legislation empowering a probate judge to require an abusive parent to leave the family home,[14] the Legislature has not authorized the probate court to do so.
Under § 18, after an adjudication, upon the conclusion of a trial, that a child is within the jurisdiction and authority of the probate court, the court may enter an order of "disposition":
 warning "the child or the child's parents," and dismissing the petition;[15]
 placing the child "on probation, or under supervision in the child's own home or in the home of an adult who is related to the child," and in so ordering include "reasonable rules for the conduct of the parents" that are designed for the "physical, mental, or moral well-being and behavior of the child, as the court determines";[16]
*408  placing "the child in a suitable foster care home subject to the court's supervision";[17]
 placing "the child in or commit[ting] the child to a private institution or agency approved or licensed" by the DSS;[18]
 committing "the child to a public institution, county facility, institution operated as an agency of the court or county, or agency authorized by law to receive children of similar age, sex, and characteristics."[19]
If the child is placed outside the home, the court may require the parent to pay the cost of placement outside the home.[20] The court might thus *409 confront a parent with the alternatives of paying the cost of maintaining the child in a foster care home or of himself leaving the home so that the child can continue to live in the home. Some probate court judges have, in that manner, brought about the removal of an allegedly offending parent from the home.
There is, however, no provision expressly authorizing the probate court to require a parent to leave the home. "[R]easonable rules for the conduct of the parents" means parental conduct in the home in respect to the child while the child is in his own home pursuant to a court order placing the child in his own home under court supervision, not parental conduct generally. The provision authorizing the probate court to include reasonable rules for the conduct of parents if the child is placed on probation or under supervision in the child's own home,[21] does not contemplate that among the "reasonable" rules is a rule requiring a parent to leave the home.
The probate court was not authorized to require Harold Macomber to act affirmatively,[22] or to provide *410 financial support, except to the extent set forth in § 18,[23] or elsewhere in chapter XIIA. Section 18 spells out precisely when, and the extent to which, a parent can be ordered by the probate court to provide financial support,[24] and does not authorize the probate court to require a parent to provide generally for the financial support of his family.[25] To the extent that is a deficiency in the legislation, the Legislature can remedy the asserted deficiency by conferring on the probate court the same power that the circuit court may have in that regard.
To be sure, the probate court may order a parent "to refrain from continuing conduct which, in the opinion of the court, has caused or tended to cause the child to come within or to remain under this chapter, or which obstructs placement or commitment of the child pursuant to an order under *411 this section."[26] That aspect of the probate court's power with respect to parental conduct is expressed in the negative  to "refrain from continued conduct." It stretches those words to the breaking point to construe them as including, when a child is placed in his own home on probation or under supervision, as including within "obstruc[tion of a] placement" a parent's presence in his own home or, even viewing his presence as an affirmative act, a parent's decision to remain in his own home.
Section 18 does not distinguish between a delinquent and an abused child. The theme of § 18 is that a delinquent or abused child should be removed from the corrupting environment. The probate court may, indeed, permit the child to remain in his own home, but the language employed to state that option, "[p]lace the child on probation, or under supervision in the child's own home or in the home of an adult who is related to the child," MCL 712A.18(1)(b); MSA 27.3178(598.18)(1)(b) (emphasis added), conveys the premise that it is the child, not the parent, who is on probation and in need of court supervision.
The Legislature has not conferred on the probate court plenary authority to govern the lives of parents insofar as may be necessary, in the probate court's judgment, to advance the well-being or best interests of even a child who has been adjudicated to be within the jurisdiction of the probate court because delinquent or abused.[27]
*412 Section 18 spells out the kinds of orders that the probate court is authorized to enter respecting the parents of a child who has been adjudicated to be within the jurisdiction of the probate court, thereby giving meaning to the limitations set forth in § 6 conferring on the probate court "jurisdiction over adults as hereinafter provided" and stating "[t]hat such orders shall be incidental to the jurisdiction of the court over such child or children." (Emphasis added.)
Since we conclude that the probate court does not, after trial and adjudication, have the authority under § 18 to enter an order of disposition requiring the father to leave the home, it is clear that, before trial and adjudication,[28] neither a referee[29] nor a judge is empowered to enter such an order.
*413 
NOTES
[1] For the words to take on the meaning which the dissent attributes to them, the section should have stated:

[T]he probate court shall have jurisdiction over adults as hereinafter provided [to] make such orders affecting adults [as necessary for the well-being of a child].
[2] In relevant part, § 18 states:

Except as otherwise provided in subsection (15), if the court finds that a child is within this chapter, the court may enter any of the following orders of disposition which is appropriate for the welfare of the child and society in view of the facts proven and ascertained.... [MCL 712A.18(1); MSA 27.3178(598.18)(1). Emphasis added.]
[3] "Where one statute deals with a subject in general terms, and another deals with a part of the same subject in a more detailed way, the two should be harmonized if possible...." 2A Sands, Sutherland Statutory Construction (4th ed), § 51.05, p 499.
[4] In In re Draper, 150 Mich App 789, 801; 389 NW2d 179 (1986), vacated in part on other grounds 428 Mich 851 (1987), the Court cited § 6 as support for an order mandating a parent to attend counseling sessions:

The probate court may make orders affecting adults as in the opinion of the court are necessary for the physical, mental, or moral well-being of a particular child or children under its jurisdiction. Such orders are incidental to the jurisdiction of the court over the children. MCL 712A.6; MSA 27.3178(598.6). It can be argued that attending parenting classes and counseling sessions might be, in a given case, necessary for the physical, mental, or moral well-being of the children. Such court-imposed requirements are similar to treatment plans often entered into by agreement between parents and the DSS.
[5] Although § 18f was not effective until April 1989, it is still relevant in construing the scope of power the Legislature intended to confer on the probate court. 2A Sands, Sutherland Statutory Construction (4th ed), § 51.03, p 469, provides:

[I]n construing an ambiguous enactment it is held proper to consider not only acts passed at the same session of the legislature or other acts to which the act in question refers, but also acts passed at prior and subsequent sessions. ... [Emphasis added.]
[6] While MCR 5.965 applies to pretrial probate court authority, it is relevant to post-trial probate court authority in that the latter would be broader.
[1] This Court granted leave to appeal limited to those questions. 434 Mich 861 (1990).
[2] In re Macomber, 176 Mich App 131; 439 NW2d 307 (1989).
[3] The caseworker had filed a complaint in the juvenile division of the probate court, alleging that the daughter was within the jurisdiction of the juvenile court under § 2(b)(2) of the Probate Code. MCL 712A.2(b)(2); MSA 27.3178(598.2)(b)(2). The complaint alleged that the home was unfit because the daughter had been deprived of her emotional well-being.
[4] 712A.1 et seq.; MSA 27.3178(598.1) et seq.
[5] 1939 PA 288, as amended, MCL 701.1 et seq.; MSA 27.3178(1) et seq. The bulk of the Probate Code was repealed when the Revised Probate Code was enacted. 1978 PA 642, MCL 700.1 et seq.; MSA 27.5001 et seq. But chapter XIIA, Juveniles and Juvenile Division, was not repealed. MCL 712A.1 et seq.; MSA 27.3178(598.1) et seq.
[6] A claim of appeal had been filed with the Court of Appeals on July 28, 1987, and the Court of Appeals opinion was filed March 21, 1989.
[7] The judgment of divorce, entered on October 24, 1988, provided alimony for Lucille Macomber for two years or less at $60 per week and child support for the daughter of $60 per week until she reached eighteen, finished high school, or discontinued her schooling.

The daughter was born December 8, 1970, and hence was on the eve of her eighteenth birthday. There was also a provision reducing the alimony to $50 per week upon the sale of the marital home and for continuation of the child support to an "extraordinarily later date as may be ordered by the court." But see Smith v Smith, 433 Mich 606; 447 NW2d 715 (1989).
[8] MCL 750.520c; MSA 28.788(3).
[9] Our disposition makes it unnecessary to consider the preliminary questions addressed by the Court of Appeals. The order granting leave to appeal did not include those issues (n 1 supra).
[10] 176 Mich App 131, 134; 439 NW2d 307 (1989). The Court of Appeals cited Fritts v Krugh, 354 Mich 97, 112; 92 NW2d 604 (1958), and In re Kasuba Estate, 65 Mich App 25, 28; 236 NW2d 751 (1975), aff'd 401 Mich 560; 258 NW2d 731 (1977). There is ample additional authority.
[11] Id., p 135.

This statute could be interpreted to grant the probate court broad powers, such as the power to order adults to attend parenting classes and counseling sessions. See In re Draper, 150 Mich App 789, 801; 389 NW2d 179 (1986), vacated in part 428 Mich 851 (1987). However, when MCL 712A.6; MSA 27.3178(598.6) is read in light of the other sections of the juvenile chapter of the probate code, particularly MCL 712A.18; MSA 27.3178(598.18), it becomes clear that the referee and probate judge exceeded their authority by ordering respondent not to reside in the family home and to pay Lucille Macomber $180 per week to support his family. We reject petitioner's argument that the probate court needs the power to do whatever it considers to be necessary for the well-being of children under its jurisdiction. The probate court's power is limited by statute. The referee's and judge's actions cannot be upheld based on their apparent good intentions in responding to allegations of misconduct. [Id., pp 135-136.]
[12] The DSS also relies on a provision of the Revised Judicature Act:

In the exercise of jurisdiction vested in the probate court by law, the probate court shall have the same powers as the circuit court to hear and determine any matter and make any proper orders to fully effectuate the probate court's jurisdiction and decisions. [MCL 600.847; MSA 27A.847.]
The argument based on this section begs the question what constitutes the "jurisdiction vested in the probate court by law...."
[13] MCL 712A.18; MSA 27.3178(598.18).
[14] Hekman, The judicial process: Hurting or helping the child victim?, 1 Colleague 12 (April, 1988).
[15] MCL 712A.18(1)(a); MSA 27.3178(598.18)(1)(a).
[16] If the court finds that a child concerning whom a petition has been filed is not within this chapter, the court shall enter an order dismissing the petition. Except as otherwise provided in subsection (15), if the court finds that a child is within this chapter, the court may enter any of the following orders of disposition which is appropriate for the welfare of the child and society in view of the facts proven and ascertained:
* * *
(b) Place the child on probation, or under supervision in the child's own home or in the home of an adult who is related to the child. As used in this subdivision "related" means any of the following relationships, by marriage, blood, or adoption: parent, grandparent, brother, sister, stepparent, stepsister, stepbrother, uncle, or aunt. The probation or supervision shall be upon such terms and conditions, including reasonable rules for the conduct of the parents, guardian, or custodian, if any, designed for the physical, mental, or moral well-being and behavior of the child, as the court determines. [MCL 712A.18(1)(b); MSA 27.3178(598.18)(1)(b).]
[17] MCL 712A.18(1)(c); MSA 27.3178(598.18)(1)(c).
[18] MCL 712A.18(1)(d); MSA 27.3178(598.18)(1)(d).
[19] MCL 712A.18(1)(e); MSA 27.3178(598.18)(1)(e).
[20] Section 18(1)(e) provides that every order of commitment, under that subdivision to a state institution or agency described in an act of the Legislature there identified, shall name the superintendent of the institution as a special guardian to receive benefits due the child from the government of the United States, and that the benefits shall be used to pay the cost of care "in the institution which the parent or parents are found unable to pay." (Emphasis added.)

Section 18 also provides:
An order of disposition placing a child in or committing a child to care outside of the child's own home and under state or court supervision shall contain a provision for the reimbursement by the child, parent, guardian, or custodian to the court for the cost of care or service. [MCL 712A.18(2); MSA 27.3178(598.18)(2). Emphasis added.]
Section 18 further provides:
An order of disposition placing a child in the child's own home under subsection (1)(b) may contain a provision for the reimbursement by the child, parent, guardian, or custodian to the court for the cost of service. If an order is entered under this subsection, amounts due shall be determined and treated in the same manner provided for an order entered under subsection (2). [MCL 712A.18(3); MSA 27.3178(598.18)(3). Emphasis added.]
If the court appoints an attorney to represent a child, parent, guardian, or custodian, an order entered under this section may require the child, parent, guardian, or custodian to reimburse the court for attorney fees. [MCL 712A.18(5); MSA 27.3178(598.18)(5). Emphasis added.]
If the child is unable to pay all of the restitution ordered, after notice to the child's custodial parent and an opportunity for the parent to be heard, the court may order the custodial parent to pay all or part of the unpaid portion of the restitution ordered. The amount of restitution the parent is ordered to pay under this subsection shall not exceed $2,500.00. [MCL 712A.18(12); MSA 27.3178(598.18)(12). Emphasis added.]
[21] See n 16.
[22] In the instant case, the probate court ordered Harold Macomber to "attend counseling and the `Parents Who Care' support group meetings as required by Wanda Carter-Smith or any replacement caseworker at the YWCA-Child Sexual Abuse Center."
[23] See n 20.
[24] Id.
[25] The DSS argues:

If the Probate Court has the power to order a sexually abusive parent from the family home, for the child's well-being, it follows that the Court has the authority to ensure that the parent supports the child. A parent is under a common-law duty to support his children. West v West, 241 Mich 679, 684; 217 [NW] 924 (1928); Slater v Slater, 327 Mich 569, 571; 42 [NW2d] 742 (1950). The Probate Court has no authority to entertain an order for enforcement of this duty as an original matter, but the Court does have the authority as part of its jurisdiction over adults to ensure that the well-being of the child is maintained. Forcing a sexually abusive father to pay support for an innocent child is a "reasonable rule for the conduct" of the father. Granted, the Probate Court has no inherent equitable powers, Johnson v Douglas, 281 Mich 247, 260; 274 [NW] 780 (1937). But the Legislature has the power to vest the Probate Court with equitable powers. VanEtten v Manufacturer's National Bank, 119 Mich App 277, 282; [326] NW2d 479 (1982).
[26] The court may: "Order the parents, guardian, custodian, or any other person to refrain from continuing conduct which, in the opinion of the court, has caused or tended to cause the child to come within or to remain under this chapter, or which obstructs placement or commitment of the child pursuant to an order under this section." MCL 712A.18(1)(g); MSA 27.3178(598.18)(1)(g).
[27] Section 18f (MCL 712A.18f; MSA 27.3178[598.18f]) was added by 1988 PA 224 and became effective April 1, 1989, after the Court of Appeals entered its decision in this case. Neither § 18f nor MCR 5.973(A)(5)(b), which also concerns § 18f, was adverted to in the briefs of the parties or of amici curiae. Section 18f and MCR 5.973(A)(5)(b) concern case service plans respecting a child who is removed from the home and who is not placed in the custody of the child's parents.
[28] If the Legislature were to decide to empower the probate court, following trial and adjudication, to require an offending parent to leave the home, it may consider whether the court should be empowered to do so before adjudication and, if so, the kind of showing consistent with the Due Process Clause required before trial and adjudication to justify entry of such an order, and whether a referee or only the judge may enter such an order.
[29] Section 10(1)(c) provides that a referee may make a recommendation for the court's findings and disposition, but does not authorize a referee to enter an order. MCL 712A.10(1)(c); MSA 27.3178(598.10)(1)(c).

Section 14 provides that if a judge or referee authorizes the filing of a complaint after a child is taken into custody, the order shall state where the child is to be placed pending investigation and hearing. The alternatives are placement in the home of the child's parent, in a suitable foster care home, in a child care institution or child placement agency licensed by the DSS, or in "a suitable place of detention." MCL 712A.14(3)(d); MSA 27.3178(598.14)(3)(d). Here, in contrast with § 18 (see n 20 and accompanying text), there is no provision authorizing the promulgation of rules respecting parental conduct or otherwise respecting adults.
Clearly, there is no language in §§ 10 or 14 that can be read as authorizing entry of an order requiring a parent to remove himself from his home.
MCR 5.965(B)(10) and § 13a (since the enactment of 1988 PA 224, adding § 13a) provide that if a child is released to a parent, the release may be on "reasonable terms and conditions" necessary for the physical health or mental well-being of the child. MCL 712A.13a(3); MSA 27.3178(598.13a)(3). Clearly, this language should be read as authorizing the court to condition a decision to release the child to the parents  rather than to detain the child  on the parents abiding by reasonable terms and conditions. The referee did not offer Harold Macomber the choice of either leaving the home, or of remaining in the home with the consequence that the daughter would be placed in foster care or otherwise institutionalized at his expense. See text following n 20.