# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* DENG, Minors.

FOR PUBLICATION
March 22, 2016
9:05 a.m.

No. 328826
Kent Circuit Court
Family Division
LC No. 14-053706-NA

Before: SAAD, P.J., and SAWYER and HOEKSTRA, JJ.

HOEKSTRA, J.

In these child protective proceedings under the Juvenile Code, MCL 712A.1 *et seq.*, respondent appeals by leave granted a dispositional order, requiring that respondent's children receive physician-recommended vaccinations. Because the trial court has the authority to make medical decisions for children under its jurisdiction over respondent's objections to immunization and the court did not clearly err by determining that vaccination was appropriate for the welfare of children and society, we affirm.

## I. FACTS & PROCEDURAL HISTORY

Respondent and her husband have four children together, all under the age of six. Following a hearing on December 23, 2014, respondent and her husband were both adjudicated as unfit parents. The facts leading to this adjudication included periods of homelessness and unstable housing, failure to provide financial support and food for the children, improper supervision of the children, and respondent's mental health and substance abuse issues, including suicidal ideation prompting respondent's hospitalization. Given these circumstances, the trial court found by a preponderance of the evidence that statutory grounds existed to exercise jurisdiction over the children pursuant to MCL 712A.2(b)(1) and (b)(2). The children were made temporary wards of the court and placed in out-of-home foster care. Respondent and her husband both received a case service plan, with the aim of reunifying the family.

At a permanency planning hearing on June 3, 2015, the foster care worker assigned to the case requested an order from the trial court requiring the children to be immunized. Respondent

objected to vaccination on religious grounds.[1] The trial court granted petitioner's request for immunization, but afforded respondent an opportunity to file written objections and to present evidence at a hearing. At the evidentiary hearing, respondent testified regarding her religious objections to vaccination, and the trial court also heard medical testimony from the children's pediatrician, who testified regarding the benefits of immunization, both to protect the children from disease and to protect society by preventing of the spread of disease. The pediatrician opined that the benefits of vaccination outweighed the risks, and she specified that vaccinations were recommended by the American Academy of Pediatrics and the Center for Disease control.

Following the hearing, the trial court issued a written opinion and order, requiring the physician-recommended vaccinations over respondent's religious objections. The trial court indicated that it would "assume" that respondent's religious objections were sincere. But, despite the sincerity of her objections, the trial court nonetheless concluded that respondent could not prevent the inoculation of her children on religious grounds because she had been adjudicated as unfit and she thus "forfeited the right" to make vaccination decisions for her children. In particular, the trial court noted that MCL 712A.18(1)(f) and MCL 722.124a afford the court authority to direct the medical care of a child within the court's jurisdiction, such that it fell to the court, and not respondent, to make medical decisions, including immunization decisions. In this context, although parents generally enjoy the right to prevent vaccinations on religious grounds incident to MCL 333.9215(2) and MCL 722.127, the trial court reasoned that these provisions did not apply to parents who have been adjudicated as "unfit." Apart from these specific statutory provisions, the trial court determined that, more generally, respondent could not a raise constitutional challenge to immunization because Free Exercise Clause challenges to immunizations have been routinely rejected by the courts and, in any event, after being adjudicated as "unfit," respondent did not have "the same level of constitutional rights of child-rearing decisions for her children in care as a fit parent would." Ultimately, the trial court concluded that it had authority to order vaccination over respondent's objections. Because it concluded that the giving of vaccines would benefit the children and society, the trial court entered an order for the children to receive the physician-recommended immunizations.

Respondent filed an application for leave to appeal and a motion for immediate consideration, both of which we granted.[2] Pending the outcome of this appeal, the trial court has stayed enforcement of its inoculation order.

On appeal, respondent argues that she has the right to object to the vaccination of her children on religious grounds, such that the trial court erred by entering an order requiring the immunization of her children. Relying on MCL 722.127 and citing briefly to provisions in the Public Health Code, MCL 333.1101 *et seq.*, respondent primarily claims a statutory right to object to the immunization of her children. Interwoven with this statutory argument, respondent

---

[1] Respondent's husband also initially objected to immunization of his children on religious grounds, but he did not participate in the evidentiary hearing and he is not a party to this appeal.

[2] *In re Deng Minors*, unpublished order of the Court of Appeals, entered October 23, 2015 (Docket No. 328826).

also emphasizes that that she has a protected liberty interest in religious freedom and the determination of the care, custody and nurturance of her children. According to respondent, under the principles set forth in *Hunter v Hunter*, 484 Mich 247; 771 NW2d 694 (2009), her rights survive even after she had been adjudicated "unfit." Consequently, respondent contends that she has an ongoing right, under MCL 722.127, to object to the vaccination of her children based on her sincerely held religious beliefs.

## II. STANDARD OF REVIEW & RULES OF STATUTORY INTERPRETATION

A trial court's dispositional orders, entered after the court assumes jurisdiction over the child, "are afforded considerable deference on appellate review." *In re Sanders*, 495 Mich 394, 406; 852 NW2d 524 (2014). While dispositional orders must be "appropriate for the welfare of the juvenile and society in view of the facts proven and ascertained," they will not be set aside unless clearly erroneous. *Id.*, quoting MCL 712A.18(1); see also *In re Macomber*, 436 Mich 386, 399; 461 NW2d 671 (1990). Likewise, any factual findings underlying the trial court's decision are reviewed for clear error. *In re Morris*, 300 Mich App 95, 104; 832 NW2d 419 (2013). To the extent the trial court's order in this case implicates questions of statutory interpretation and constitutional law, our review of these questions of law is de novo. *In re AMAC*, 269 Mich App 533, 536; 711 NW2d 426 (2006).

The goal of statutory interpretation is to give effect to the Legislature's intent. *In re AJR*, 496 Mich 346, 352; 852 NW2d 760 (2014). To ascertain the Legislature's intent, we begin with the language of the statute, affording words their plain and ordinary meaning. *In re LE*, 278 Mich App 1, 22; 747 NW2d 883 (2008). "The Legislature is presumed to have intended the meaning it plainly expressed, and when the statutory language is clear and unambiguous, judicial construction is neither required nor permitted." *In re RFF*, 242 Mich App 188, 198; 617 NW2d 745 (2000).

## III. ANALYSIS

Religious freedom and the right to "bring up children" are among those fundamental rights "long recognized . . . as essential to the orderly pursuit of happiness by free men." *Meyer v Nebraska*, 262 US 390, 399; 43 S Ct 625, 626; 67 L Ed 1042 (1923). "Generally, the state has no interest in the care, custody, and control of the child and has no business interfering in the parent-child relationship." *In re AP*, 283 Mich App 574, 591; 770 NW2d 403 (2009). Instead, "the custody, care and nurture of the child reside first in the parents[.]" *Prince v Massachusetts*, 321 US 158, 166; 64 S Ct 438, 442; 88 L Ed 645 (1944). Indeed, "[i]t is undisputed that parents have a fundamental liberty interest in the companionship, care, custody, and management of their children." *In re B & J*, 279 Mich App 12, 23; 756 NW2d 234 (2008). Moreover, parents, and their children, enjoy the right to the free exercise of religion, and parents have the right to give their children "religious training and to encourage them in the practice of religious belief, as against preponderant sentiment and assertion of state power voicing it[.]" *Prince*, 321 US at 165. See also *Wisconsin v Yoder*, 406 US 205, 213; 92 S Ct 1526; 32 L Ed 2d 15 (1972).

However, a parent's right to control the custody and care of children "is not absolute, as a state has a legitimate interest in protecting the moral, emotional, mental, and physical welfare of the minor." *In re Sanders*, 495 Mich at 409-410; (citation and quotation marks omitted). "When

a child is parented by a fit parent, the state's interest in the child's welfare is perfectly aligned with the parent's liberty interest." *Id.* at 416. That is, "there is a presumption that fit parents act in the best interests of their children." *Troxel v Granville*, 530 US 57, 68; 120 S Ct 2054; 147 L Ed 2d 49 (2000) (opinion by O'CONNOR, J.). Thus, "so long as a parent adequately cares for his or her children (*i.e.,* is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." *Id.* at 68-69. See also *In re AP*, 283 Mich App at 591.

In contrast, when a parent has been found "unfit," the state may interfere with a parent's right to direct the care, custody, and control of a child. See *In re Sanders*, 495 Mich at 418; *In re AP*, 283 Mich App at 592-593. This intervention may be initiated under abuse and neglect provisions of the Juvenile Code, which begins with the state's filing of a petition, requesting that the court take jurisdiction over a child. *In re Sanders*, 495 Mich at 404; *In re Kanjia*, 308 Mich App 660, 664; 866 NW2d 862 (2014). Once a petition has been filed, there are two phases to child protective proceedings in Michigan: the adjudicative phase and the dispositional phase. *In re Sanders*, 495 Mich at 404. During the adjudicative phase, by accepting a parent's plea or conducting a trial regarding the allegations in the petition, the court determines whether it can take jurisdiction over the child. *Id.* at 404-405. See also MCL 712A.2(b); MCR 3.971; MCR 3.972. The procedural safeguards in place during the adjudicative phrase "protect the parents from the risk of erroneous deprivation" of their rights. *In re Sanders*, 495 Mich at 406, quoting *In re Brock*, 442 Mich 101, 111; 499 NW2d 752 (1993). Ultimately, "[w]hen the petition contains allegations of abuse or neglect against a parent, MCL 712A.2(b)(1), and those allegations are proved by a plea or at the trial, the adjudicated parent is unfit." *In re Sanders*, 495 Mich at 405.

After the parent has been found "unfit," the trial court assumes jurisdiction over the child and the dispositional phase of proceedings begins. *Id.* at 406. "The purpose of the dispositional phase is to determine 'what measures the court will take with respect to a child properly within its jurisdiction and, when applicable, against any adult . . . .'" *Id.*, quoting MCR 3.973 (emphasis omitted). To effectuate this purpose, the court holds periodic review hearings at which respondent has a right to be present, to examine reports, and to cross-examine individuals making those reports. MCR 3.973(D)(2) and (E)(3); *In re Sanders*, 495 Mich at 407. In determining what measures to take with respect to a child, the court must consider the case service plan prepared by the DHHS as well as information provided by various individuals, including the child's parent. MCL 712A.18f(4); MCL 3.973(E)(2) and (F)(2); *In re Sanders*, 495 Mich at 406-407.

"The court has broad authority in effectuating dispositional orders once a child is within its jurisdiction." *In re Sanders*, 495 Mich at 406. And, the court may enter "orders that govern all matters of care for the child." *In re AMB*, 248 Mich App 144, 177; 640 NW2d 262 (2001). See also *In re Macomber*, 436 Mich at 389. For example, relevant to the present dispute, under MCL 712A.18(1), if the court finds that a child is under its jurisdiction, the court may enter orders of disposition that are "appropriate for the welfare of the juvenile and society in view of the facts proven and ascertained," including an order to "[p]rovide the juvenile with medical, dental, surgical, or other health care, in a local hospital if available, or elsewhere, maintaining as

much as possible a local physician-patient relationship . . . ." MCL 712A.18(1)(f). See also MCL 712A.18f(4); *In re AMB*, 248 Mich App at 176-177.

With this framework in mind, the question before us in this case is a narrow one—namely, whether a parent who has been adjudicated as unfit has the right during the dispositional phase of the child protective proceedings to object to the inoculation of her children on religious grounds.[3] We conclude that, by virtue of adjudication proceedings establishing a parent as "unfit," the parent relinquishes this right and must yield to the trial court's orders regarding the child's welfare. Consequently, during the dispositional phrase, the trial court has the authority to order vaccination of a child when the facts proven and ascertained demonstrate that immunization is appropriate for the welfare of the juvenile and society. MCL 712A.18(1)(f).

In particular, as noted, parents have a fundamental liberty interest in the care and control of their children, and a fundamental right to the free exercise of their religion, including the right to raise their children in that religion. *Meyer*, 262 US at 399. These rights do "not evaporate simply because they have not been model parents." *Santosky v Kramer*, 455 US 745, 753; 102 S Ct 1388; 71 L Ed 2d 599 (1982). Nonetheless, it is only "fit" parents who are presumed to act in the best interests of their children, and only "fit" parents who enjoy the control, care, and custody of their children unfettered by governmental interference. See *Troxel*, 530 US at 68-69; *In re Sanders*, 495 Mich at 410. In contrast, through the course of child protective proceedings, particularly the adjudicative phase, the parent loses the presumption of fitness, at which time the state becomes empowered to interfere in the family for the welfare of the child and to infringe on the parent's ability to direct the care, custody, and control of the child. See *In re Sanders*, 495 Mich at 418; *In re AP*, 283 Mich App at 592-593. Parental rights have not been irrevocably lost at this stage, but a determination of "unfitness so breaks the mutual due process liberty interests as to justify interference with the parent-child relationship." *In re Clausen*, 442 Mich 648, 687 & n 46; 502 NW2d 649 (1993).

As a result, the court gains broad powers to enter orders for the welfare of the child and the interests of society, and to make decisions regarding a host of issues which would normally fall to the parent to decide, including the ability to decide the child's placement, to order medical or other health care for the child, to provide clothing and other incidental items as necessary, to order compliance with case service plans, to allow parental visitation with the child, to enter orders affecting adults, and, more generally, to enter orders as the court considers necessary for the interests of the child. MCL 712A.18; MCL 712A.18f(4); MCL 712A.6; MCR 3.973(F);

---

[3] While the trial court more generally considered the right to object to childhood immunizations on religious grounds and concluded that Free Exercise Challenges cannot be maintained against physician-recommended vaccines, even by fit parents, we find it unnecessary to decide this broader constitutional question and instead limit our holding to parents who have been adjudicated as unfit in the course of child protective proceedings. See generally *Booth Newspapers, Inc v Univ of Mich Bd of Regents*, 444 Mich 211, 234; 507 NW2d 422 (1993) ("[T]here exists a general presumption by this Court that we will not reach constitutional issues that are not necessary to resolve a case.").

MCL 3.975(G). See also *In re Sanders*, 495 Mich at 407. Quite simply, following adjudication, which affords a parent due process for the protection of her liberty interests, the parent is no longer presumed "fit" to make decisions for the child and that power, including the power to make medical decisions involving immunizations, rests instead with the court. See MCL 712A.18(1)(f); *In re Sanders*, 495 Mich at 409-410, 418. Consequently, given respondent's adjudication as an unfit parent and the safeguards affording her due process for the protection of her rights during the child protective proceedings, we find no constitutional basis on which respondent may prevent the court's interference with her control of her children and, in particular, the immunization of her children, when the facts proven and ascertained in this case demonstrate that inoculation is appropriate for the welfare of her children and society.[4] MCL 712A.18(1)(f).

Aside from her espousal of general constitutional principles, respondent contends on appeal that she has the statutory authority—which was designed for the protection of her constitutional rights—to object to the immunization of her children, and that this right persists even after her adjudication as an unfit parent. With regard to immunizations, Michigan has a statutory scheme, as set forth in the Public Health Code, governing vaccinations. As empowered by the Legislature, the Michigan Department of Health and Human Services[5] (DHHS) has the authority to establish procedures for the control of diseases and infections, including the ability to establish immunization requirements. MCL 333.5111(2)(c). Regarding children in particular, the DHHS may promulgate rules related to childhood immunizations, including ages for immunizations and minimum number of doses required. MCL 333.9227(1). Parents are required to provide for the immunization of their children "within an age period" prescribed by the DHHS, MCL 333.9205, and to present a certificate of immunization when enrolling their child in school or preschool, MCL 333.9208(1); MCL 333.9211(1). However, as an exception to this requirement, a child is exempt from vaccination requirements if a parent provides a written statement indicating that the vaccination requirements "cannot be met because of religious convictions or other objection to immunization." MCL 333.9215(2). See also MCL 333.5113(1) and MCL 380.1177(1)(b).

We recognize that, were respondent a fit parent entitled to the control and custody of her children, MCL 333.9215(2) would undoubtedly allow her to forego the immunization of her children otherwise required by the Public Health Code on the grounds of a religious objection. However, this provision is inapplicable on the present facts for the simple reason that the

---

[4] Respondent does not challenge the trial court's factual findings and, based on the evidence presented at the evidentiary hearing, we see nothing clearly erroneous in the trial court's conclusion that vaccination of the children served their welfare and that of society.

[5] The statute refers to the Department of Community Health (DCH). See MCL 333.5456(1). However, the DCH merged with the Department of Human Services (DHS), and is now known as the DHHS. *Estate of Ketchum v Dep't of Health & Human Servs*, __ Mich App __, __; __ NW2d __ (2016) (Docket No. 324741), slip op at 1 n 1 , citing Executive Order No. 2015–4. The authority and responsibilities of the DCH and the DHS transferred to the DHHS. See MCL 400.227.

children are not being immunized as a result of provisions in the Public Health Code. That is, the trial court did not order the children's immunization under any provision in the Public Health Code; rather, as discussed, the court exercised its broad authority to enter dispositional orders for the welfare of a child under its jurisdiction, including the authority to enter dispositional orders regarding medical treatment. See MCL 712A.18(1)(f); *In re Sanders*, 495 Mich at 406. This authority is conferred on the trial court by MCL 712A.18(1)(f) of the Juvenile Code, following the adjudication of the parent as unfit. See MCL 712A.2(b). The Juvenile Code includes no provision restricting the trial court's authority to enter dispositional orders affecting a child's medical care on the basis of a parent's objections to immunizations, and it would be inappropriate to graft in such an exception from the Public Health Code. See generally *Grimes v Mich Dep't of Transp*, 475 Mich 72, 85; 715 NW2d 275 (2006) ("[R]eliance on an unrelated statute to construe another is a perilous endeavor to be avoided by our courts."); *Donkers v Kovach*, 277 Mich App 366, 371; 745 NW2d 154 (2007) ("[C]ourts cannot assume that the Legislature inadvertently omitted from one statute the language that it placed in another statute, and then, on the basis of that assumption, apply what is not there." (citation omitted)). Instead, as a statutory matter, after a parent has been found unfit, MCL 712A.18(1)(f) affords courts the broad authority to make medical decisions for a child under its jurisdiction, and respondent cannot rely on provisions in the Public Health Code to trump this broad grant of judicial authority.

Similarly, as a statutory matter, respondent relies heavily on MCL 722.127 of The Child Care Organizations Act, MCL 722.111 *et seq*. The Child Care Organizations Act concerns the care of children in child care organizations, including institutions, placing agencies, camps, nursery schools, day care centers, foster homes, and group homes. See MCL 722.111. Under MCL 722.124a(1):

> A probate court, a child placing agency, or the department may consent to routine, nonsurgical medical care, or emergency medical and surgical treatment of a minor child placed in out-of-home care pursuant [MCL 400.1 to MCL 400.121; MCL 710.21 to MCL 712A.28]. If the minor child is placed in a child care organization, then the probate court, the child placing agency, or the department making the placement shall execute a written instrument investing that organization with authority to consent to emergency medical and surgical treatment of the child. The department may also execute a written instrument investing a child care organization with authority to consent to routine, nonsurgical medical care of the child. If the minor child is placed in a child care institution, the probate court, the child placing agency, or the department making the placement shall in addition execute a written instrument investing that institution with authority to consent to the routine, nonsurgical medical care of the child.

"By its language, this statute applies to children 'placed in out-of-home care' pursuant to a variety of statutes concerning child welfare, adoption, and protection, including protective proceedings under the Juvenile Code." *In re AMB*, 248 Mich App at 178. This provision is more general than statutes relating to the court's authority to enter a dispositional order under the Juvenile Code in the sense that, unlike a court's authority to enter orders during the dispositional phrase of child protective proceedings, MCL 722.124a(1) is not "related to any particular phase

in any of the varied child welfare proceedings to which it applies." *In re AMB*, 248 Mich App at 178-179. Rather, the court's authority to enter treatment under this statute "primarily depends on whether the child has been 'placed in out-of-home care.'" *Id.* at 179.

Aside from this provision authorizing a probate court, a child placing agency, or DHHS to consent to a child's treatment when the child is placed in out-of-home care, the Child Care Organizations Act states that the DHHS[6] "is responsible for the development of rules for the care and protection of children in organizations covered by this act." MCL 722.112(1). In addition, MCL 722.127 of the Child Care Organizations Act protects a parent's ability to object to medical immunization on religious grounds. It states: "Nothing in the rules adopted pursuant to this act shall authorize or require medical examination, immunization, or treatment for any child whose parent objects thereto on religious grounds." MCL 722.127.

Respondent argues that MCL 722.127 applies to children placed in out-of-home care and it thus affords her the ongoing right to prevent the immunization of her children. Assuming that MCL 722.127 functions as limit on judicial authority under MCL 722.124a,[7] the obvious flaw in respondent's argument is that MCL 722.127 plainly applies in the context of "this act," and "this act" is the Child Care Organization Act, not the Juvenile Code. As discussed, the Juvenile Code contains no provision limiting the court's broad authority to make medical decisions based on a parental objection to immunizations, and it is not our role to create such an exception in the Juvenile Code.

Moreover, to the extent MCL 722.124a covers the same subject matter as provisions in the Juvenile Code, and there is an arguable conflict between the limitations in MCL 722.127 and a court's broader authority under the Juvenile Code, the Juvenile Code prevails as the more specific grant of authority. See *Detroit Pub Sch v Conn*, 308 Mich App 234, 251; 863 NW2d 373 (2014); *In re Harper*, 302 Mich App 349, 358; 839 NW2d 44 (2013). That is, the Juvenile Code and MCL 722.124a of the Child Care Organizations Act may overlap in cases, such as this one, where a child has been placed in out-of-home care following an adjudication of parental unfitness. In such cases, the court could potentially look to either MCL 722.124a or MCL 712A.18(1)(f) when considering the medical needs of a child. However, MCL 712A.18(1)(f) is a more specific provision insofar as it applies to the court's authority to enter dispositional orders, while MCL 722.124a applies whenever a child is placed in out-of-home care without regard to any particular phase of any of the various child welfare proceedings to which it applies. See *In re AMB*, 248 Mich App at 179. As the more specific provision, governing the court's authority to order medical care after a parent has been adjudicated "unfit" during child protective

---

[6] The statute refers to the DHS. MCL 722.112. But, as noted, the DHS has merged with the DCH to become the DHHS.

[7] We note that MCL 722.127 applies to "*the rules* adopted pursuant to this act," and "the rules" are developed by DHHS pursuant to MCL 722.112(1). See, e.g., Mich Admin Code R 400.12413(1)(d). Given that the DHHS, and not the probate court, develops rules under the Child Care Organization Act, it is questionable whether MCL 722.127 functions as a limitation on the probate court's authority to consent to medical care under MCL 722.124a.

proceedings, MCL 712A.18(1)(f) prevails over the court's more general authority as set forth in MCL 722.124a. See *Detroit Pub Sch*, 308 Mich App at 251; *In re Harper*, 302 Mich App at 358. Because the Juvenile Code contains no immunization limitations on the trial court's broad authority to enter dispositional orders for the welfare of the children and society, the court acted within its statutory order under MCL 712A.18(1)(f) when entering the order in this case.

Finally, we note that respondent's reliance on *Hunter* is misplaced. *Hunter* involved a child custody dispute between a birth-mother and the children's paternal aunt and uncle, who had provided the children with an established custodial environment during a period of time when the mother was incarcerated and addicted to crack cocaine. *Hunter*, 484 Mich at 252. The trial court concluded that the mother was an unfit parent and ultimately awarded custody to the aunt and uncle, reasoning that they had an established custodial environment and the children's best interests were served by remaining in that environment. *Id.* at 253-256. On appeal, the Supreme Court considered provisions of the Child Custody Act, MCL 722.21 *et seq.* and, in particular, the interplay between the presumption in favor of parental custody set forth MCL 722.25(1) and the presumption in favor of an established custodial environment in MCL 722.27(1)(c). *Hunter*, 484 Mich at 257-259. The Supreme Court concluded that the parental presumption prevails over the presumption in favor of an established custodial environment. *Id.* at 265-266, 273. In so holding, the Court expressly rejected the proposition that the statutory presumption in favor of natural parents applies only to fit parents. *Id.* at 271. The Court reasoned that MCL 722.25(1) did not mandate a fitness determination for the presumption to apply, and thus the presumption contained in this provision applies to all natural parents, not merely fit parents. *Id.* at 270-272.

Respondent now argues on appeal that *Hunter* supports the proposition that her right to object to the immunization of her children does not depend on whether she is a fit or unfit parent because the statutory provisions on which she relies contain no reference to "fit" parents. Contrary to respondent's argument, *Hunter* does not support her position, and it does not impact the rights of parents adjudicated as "unfit" in child protective proceedings. Rather, by its express terms, *Hunter* distinguished custody proceedings from other proceedings involving parental rights, and made plain that *Hunter*'s application was limited to cases involving the Child Custody Act. The Court explained:

> (1) This case deals with custody actions initiated under the [Child Custody Act] involving both the parental presumption in MCL 722.25(1) and the established custodial environment presumption in MCL 722.27(1)(c). This opinion should not be read to extend beyond [Child Custody Act] cases that involve conflicting presumptions or to cases that involve parental rights generally but are outside the scope of the [Child Custody Act].

> (2) This opinion does not create any new rights for parents. The United States Supreme Court decisions regarding the constitutional rights of parents previously discussed in this opinion provide guidance that informs our analysis. This opinion does not magically grant parents additional rights or a constitutional presumption in their favor. It does not grant unfit parents constitutional rights to their children other than due process rights. [*Hunter*, 484 Mich at 276.]

Thus, *Hunter* does not apply in this case because the present case does not involve the Child Custody Act or the application of the parental presumption found in MCL 722.25(1). Instead, the proceedings are child protective proceedings under the Juvenile Code, which, unlike the presumption found in MCL 722.25(1), fully contemplate a trial court's assessment of parental fitness during the adjudicative phrase, MCL 712A.2(b); *In re Sanders*, 495 Mich at 405, and which expressly authorize the court to order medical care for a child within its jurisdiction, after a finding of parental unfitness, during the dispositional phrase, MCL 712A.18(1)(f). Quite simply, *Hunter* is inapplicable in the context of the child protective proceedings at hand.

In sum, respondent's reliance on MCL 722.127 and provisions of the Public Health Code is misplaced. After her adjudication as an unfit parent, respondent lost, at least temporarily, the right to make immunization decisions for her children. That responsibility now rests with the trial court, and the trial court did not exceed its authority by ordering immunization of the children over respondent's objections given that the facts proven and ascertained demonstrate that immunization is appropriate for the welfare of the children and society. MCL 712A.18(1)(f).

Affirmed.


/s/ Joel P. Hoekstra
/s/ Henry William Saad
/s/ David H. Sawyer