PEOPLE v THOMAS

Docket No. 77-3591. Submitted June 15, 1978, at Grand Rapids.— Decided September 19, 1978.

Daniel L. Thomas, a work coordinator at Oak Haven, a religious practical training school, was charged with second-degree murder in connection with the death of a 19-year-old male resident of Oak Haven who was a "catatonic schizophrenic". The victim died subsequent to a beating administered as a form of discipline by the defendant with a rubber hose. The autopsy revealed that the actual cause of death was acute pulmonary edema resulting from the aspiration of stomach contents. The aspiration caused a laryngeal spasm causing the decedent to suffocate in his own vomit. There was testimony at trial that the underlying cause of death was the trauma to the decedent's legs as a result of the beating.

The defendant was convicted of involuntary manslaughter in Allegan Circuit Court, George R. Corsiglia, J. The defendant appeals, claiming (1) that the prosecution failed to establish the malice element of second-degree murder, (2) that the prosecution failed to establish the elements of involuntary manslaughter, (3) that the defendant was interrogated in violation of *Miranda,* (4) that the trial court erred by failing to give a requested instruction on causation, (5) that the trial court erred by allowing the admission of evidence of an earlier beating and

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 40 Am Jur 2d, Homicide § 264.
   Homicide: presumption of deliberation or premeditation from the fact of killing. 86 ALR2d 656.
[2] 40 Am Jur 2d, Homicide §§ 54, 70.
[3] 40 Am Jur 2d, Homicide § 338.
   Necessity of informing suspect of rights under privilege against self-incrimination, prior to police interrogation. 10 ALR3d 1054.
[4] 40 Am Jur 2d, Homicide § 506.
[5] 40 Am Jur 2d, Homicide §§ 311, 313.
[6] 40 Am Jur 2d, Homicide § 20.

(6) that the prosection failed to present sufficient evidence of a causal connection between the defendant's acts and the victim's death. *Held:*.

1. The defendant's savage and brutal beating of the decedent was amply sufficient to establish malice.

2. The defendant stood in a position of authority over the decedent and by obtaining permission from the victim's parents to discipline the decedent, the defendant directly and voluntarily assumed a parental function and stood in a position of *loco parentis* to the decedent and the defendant's failure to provide medical attention for the decedent, when decedent was unable to obtain it for himself, was a violation of the defendant's legal duty to care for the victim. The elements of involuntary manslaughter were adequately established.

3. There was no violation of defendant's rights under *Miranda* because the questioning of which the defendant complains was at a time before the investigation had focused on the defendant.

4. The refusal to give the requested jury instruction on causation was not error, because the trial court gave an instruction on causation which was a clear, concise and correct statement of the law.

5. Evidence of the prior beating was properly admitted as a like act tending to show the defendant's motive, intent, or the absence of mistake or accident on the defendant's part.

6. Sufficient evidence of a causal relationship between the acts of the defendant and the decedent's death was established by the prosecution. There was evidence introduced that death was medically likely to have been caused by the beating through a chain of natural events and causes unchanged by human action.

Affirmed.

1. HOMICIDE—MALICE—INTENT TO KILL—INFERENCES.

Malice or intent to kill may be inferred from the acts of a defendant charged with homicide; intent to kill may be implied where an actor actually intends to inflict great bodily harm or the natural tendency of his behavior is to cause death or great bodily harm.

2. HOMICIDE—INVOLUNTARY MANSLAUGHTER—FAILURE TO PERFORM A LEGAL DUTY.

Involuntary manslaughter may be based on a failure to perform a legal duty.

3. Constitutional Law—Criminal Law—Miranda Warnings—Focus of Investigation.

> Investigation of a homicide had not focused on a defendant for the purpose of determining whether *Miranda* warnings were required where the questioning of the defendant took place at a time when the preliminary indications were that the decedent died of natural causes.

4. Homicide—Instructions to Jury—Causation—Standard Criminal Jury Instructions.

> Refusal to give a requested instruction to the jury on causation in a homicide case was not error where the trial court instead gave an instruction on causation taken from the Standard Criminal Jury Instructions which was a clear, concise and correct statement of the law; use of the Standard Criminal Jury Instructions is favored (CJI 16:1:01).

5. Homicide—Evidence—Similar Acts—Statutes.

> Evidence of a first beating of a decedent by a defendant was properly admitted as a like act tending to show the defendant's motive, intent, or the absence of mistake or accident on the defendant's part where the defendant was being tried for a homicide because of the decedent's death which followed a second beating by the defendant (MCL 768.27; MSA 28.1050).

6. Homicide—Causation.

> Wounds inflicted by a defendant on a decedent need not necessarily be fatal and the direct cause of death to support a conviction of homicide; it is sufficient that they cause death indirectly through a chain of natural effects and causes unchanged by human action.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Fred R. Hunter, III* (Prosecuting Attorneys Appellate Service, *Thomas C. Nelson,* Assistant Attorney General, of counsel), for the people.

*Lee Boothby,* for defendant on appeal.

Before: D. E. Holbrook, Jr., P. J., and T. M. Burns and W. Van Valkenburg,* JJ.

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

D. E. HOLBROOK, JR., P. J. Charged with second-degree murder, MCL 750.317; MSA 28.549, defendant was convicted by a jury of involuntary manslaughter, MCL 750.321; MSA 28.553. Thereafter, sentenced to a prison term of 5 to 15 years, defendant appeals as of right.

The facts pertinent to this appeal are as follows:

The victim, a 19-year-old male "catatonic schizophrenic", was at the time of his death a resident of Oak Haven, a religious practical training school. When it appeared he was not properly responding to ordinary treatment, defendant, the work coordinator at Oak Haven, obtained permission from the victim's parents to discipline him if such seemed necessary. Thereafter defendant, together with another supervisor at Oak Haven, took decedent to the edge of the campus, whereupon decedent's pants were taken down, following which he was spanked with a rubber hose. Such disciplinary session lasted approximately 15 to 30 minutes. During a portion thereof decedent's hands were tied behind his back for failure to cooperate.

Following the disciplinary session aforesaid, defendant testified that the young man improved for awhile but then commenced to backslide. Defendant again received permission from decedent's parents to subject him to further discipline. On September 30, 1976, defendant again took decedent to the approximate same location, removed his pants, bound his hands behind him with a rope looped over a tree limb and proceeded to beat him with a doubled-over rubber hose. This beating lasted approximately 45 minutes to an hour. While the evidence conflicted, it appears that the victim was struck between 30 to 100 times. The beating resulted in severe bruises ranging from the victim's waist to his feet. Decedent's roommate testified

that decedent had open bleeding sores on his thighs. On the date of death, which was nine days after the beating, decedent's legs were immobile. At no time did defendant obtain medical attention for the victim.

Defendant admitted he had exercised poor judgment, after seeing the bruises, in continuing the discipline. He further testified that in the two days following the discipline, decedent seemed to be suffering from the flu, but by Sunday was up and walking and was in apparent good health until one week following the beating, when decedent became sick with nausea and an upset stomach. These symptoms continued for two days, when decedent died.

As a result of the autopsy, one Dr. Clark testified that the bruises were the result of a trauma and that decedent was in a state of continuous traumatization because he was trying to walk on his injured legs. Dr. Clark testified that decedent's legs were swollen to possibly twice their normal size. He further testified that the actual cause of death was acute pulmonary edema, resulting from the aspiration of stomach contents. Said aspiration caused a laryngeal spasm, causing decedent to suffocate on his own vomit. Although pulmonary edema was the direct cause of death, Dr. Clark testified that said condition usually had some underlying cause and that, while there were literally hundreds of potential underlying causes, it was his opinion that in the instant case the underlying cause was the trauma to decedent's legs. In explaining how the trauma ultimately led to the pulmonary edema, Dr. Clark testified that the trauma to the legs produced "crush syndrome" or "blast trauma", also known as "tubular necrosis".

"Crush syndrome" is a condition caused when a

part of the body has been compressed for a long period of time and then released. In such cases, there is a tremendous amount of tissue damage to the body part that has been crushed. When the compression is relieved, the tissues begin to return to their normal position, but due to the compression, gaps appear between the layers of tissues, and these areas fill up with blood and other body fluids, causing swelling. In the present case, Dr. Clark estimated that about 10–15% of decedent's entire body fluids were contained in the legs, adding an additional ten pounds in weight to the normal weight of the legs and swelling them to twice their normal size. This extra blood and body fluid decreased the amount of blood available for circulation in the rest of the body and would cause the person to become weak, faint and pass out if he attempted to sit up or do other activities. Decedent was sitting up when he died. It was Dr. Clark's opinion that the causal connection between the trauma and death was more than medically probable and that it was "medically likely". He further testified he could say with a reasonable degree of medical certainty that the trauma to the legs was the cause of death.

One Agatha Thrash, a pathologist called by the defense, offered testimony to refute that of Dr. Clark, although she did admit that pulmonary edema could have been the final cause of death and that Dr. Clark was correct in finding acute tubular necrosis. She concluded that death was probably caused by "encephalo myocarditas" which is an acute swelling of the brain and heart.

On appeal defendant raises eleven issues, which for our purposes we condense into six. Choosing to reserve the most difficult for the last, we proceed to discuss the remaining five.

Appellant claims that the prosecution failed to establish the malice element of second-degree murder. We disagree. Malice or intent to kill may be inferred from the acts of the defendant. In *People v Morrin,* 31 Mich App 301, 310–311, 323; 187 NW2d 434 (1971), then Judge, now Justice Levin, stated that the intent to kill may be implied where the actor actually intends to inflict great bodily harm or the natural tendency of his behavior is to cause death or great bodily harm. In the instant case defendant's savage and brutal beating of the decedent is amply sufficient to establish malice. He clearly intended to beat the victim and the natural tendency of defendant's behavior was to cause great bodily harm.

Appellant also claims that the prosecution failed to establish the elements of involuntary manslaughter. Again we disagree. Involuntary manslaughter may be based on the failure to perform a legal duty. *People v Beardsley,* 150 Mich 206; 113 NW 1128 (1907). Defendant was a supervisor of Oak Haven, stood in a position of authority over the victim and, by talking with the victim's parents and obtaining their permission to discipline the decedent, he directly and voluntarily assumed a parental function, and stood in a position of *loco parentis* to the decedent. Under such circumstances, defendant's beating of the victim coupled with his failure to provide medical attention, when decedent was unable to obtain same himself, violated defendant's legal duty to care for the victim. The elements of involuntary manslaughter were adequately established.

Additionally, defendant argues that the first police questioning of the defendant, in defendant's office, was conducted at a time when the defendant was the *focus* of the investigation rendering any

statements made by defendant inadmissible for failure to give *Miranda* warnings. Here the questioning of defendant, in defendant's office, took place at a time when the preliminary indications were that decedent died of natural causes. Hence we conclude that the investigation had not focused on defendant for the purpose of determining whether *Miranda* warnings were required.

Defendant further claims that the trial court erred by failing to give the following defense requested instruction on causation:

"The criminal standard which you must apply in this case requiring proof beyond a reasonable doubt, precludes convictions where the causal connection is based upon probabilities or only a reasonable degree of medical certainty."

The court instead gave an instruction on causation taken from CJI 16:1:01. This instruction stated that causation must be proven beyond a reasonable doubt. Such instruction was a clear, concise and correct statement of the law. Moreover, the use of Standard Criminal Jury Instructions is favored. *People v Hernandez,* 80 Mich App 465; 264 NW2d 343 (1978). The Court did not err in refusing to give defendant's requested instruction.

Next defendant claims that the trial court erred by allowing evidence of the first beating to be admitted. We hold such to have been properly admitted as a like act tending to show defendant's motive, intent, the absence of mistake or accident on defendant's part. MCL 768.27; MSA 28.1050. Even should we assume, *arguendo,* the admission of such evidence to have been error, we would hold same to be harmless beyond a reasonable doubt.

Lastly, defendant claims that the prosecution failed to present sufficient evidence of the causal

connection between defendant's acts and the victim's death. Again we disagree.

In *People v Geiger,* 10 Mich App 339; 159 NW2d 383 (1968), defendant had struck his wife two or three times with his open hand and pushed her to the ground in such a manner that she bumped her head against the car. Defendant picked her up and put her in his car. While a need for immediate medical attention existed, defendant obtained none until after waiting 6 to 8 hours, during which time he drove over 180 miles. In *Geiger* the medical cause of death was " 'aspiration of the gastric contents into the air passages with resultant shock, asphyxia, collapse and pulmonary edema' ", 10 Mich App at 342–343. In short, sometime after the beating decedent choked to death on her own vomit. The pathologist who performed the autopsy testified he thought that the blows to the head or side of the face caused the minor brain damage which contributed to diminution of laryngeal reflexes, allowing the asphyiation, and had it not been for the blows, the victim would have been able to vomit and remove her stomach contents in a normal fashion.

In *People v McFee,* 35 Mich App 227; 192 NW2d 355 (1971), where defendant, over a period of several hours, inflicted a severe beating upon a 12-year-old boy resulting in particles of partially digested food to become stuck in the vocal cord causing a cardiac arrest from the coughing reflex, the pathologist testified that in his best medical judgment there was a definite relationship between the bruising and the boy's death.

In both *Geiger* and *McFee* the Court found the prosecution to have established a sufficient causal relationship.

The case at bar is closely analogous to the

*Geiger* and *McFee* cases. Here the pathologist tesitifed that the trauma to the victim's legs caused the chain of events that led to the victim's death and that causation was not only medically probable but *medically likely.* In *People v Geiger, supra,* the Court quoted with approval from 26 Am Jur, Homicide, § 52, p 195, wherein it states:

"It is not indispensable to a conviction that the wounds be necessarily fatal and the direct cause of death. It is sufficient that they cause death indirectly through a chain of natural effects and causes unchanged by human action."

A similar analogy was made by the Court in *McFee.* Such is the case here. Death was *medically likely* to have been caused by the beating through a chain of natural effects and causes unchanged by human action. Pulmonary edema resulted and the victim choked to death on his own vomit. Sufficient evidence of causal relationship was established by the prosecution. No reversible error occurred.

Affirmed.