*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

*In re* E. J. SMITH, Minor.

FOR PUBLICATION
January 28, 2021

No. 353861
Grand Traverse Circuit Court
Family Division
LC No. 19-004787-NA

Before: SWARTZLE, P.J., and BORRELLO and RONAYNE KRAUSE, JJ.

RONAYNE KRAUSE, J. *(dissenting)*

I respectfully dissent. I agree with the majority's recitation of the underlying facts. As the majority observes, this appeal appears to be moot as to these particular parties at this time. As the majority also observes, the nature of the issue in this appeal is of great importance and likely to recur, albeit involving different parties. I respectfully do not share the majority's confidence that future disputes of this nature will not evade judicial review. I would therefore address the substantive issues in this matter and conclude that, rather than simply deferring to the unadjudicated parent, the trial court should have resolved the vaccination dispute under the Child Custody Act.

## I. MOOTNESS

This Court reviews mootness de novo, and "mootness is a threshold issue that a court must address before it reaches the substantive issues of a case." *Can IV Packard Square, LLC v Packard Square, LLC*, 328 Mich App 656, 661; 939 NW2d 454 (2019) (quotations and citations omitted). Mootness may, and in some instances should, be raised sua sponte by an appellate court. *People v Richmond*, 486 Mich 29, 35; 782 NW2d 187 (2010). As the majority observes, the courts generally may not address issues that are merely hypothetical. *In re Smith*, 324 Mich App 28, 41; 919 NW2d 427 (2018). An issue is moot if the courts cannot craft an order having "any practical legal effect upon a then existing controversy." *League of Women Voters of Mich v Sec'y of State*, __ Mich __, __; __ NW2d __ (2020) (Docket No. 160907); slip op at 11 (quotation omitted).

However, there is an exception to mootness: "even though an issue is moot, it is nevertheless justiciable if the issue is one of public significance that is likely to recur, yet may evade judicial review." *Richmond*, 486 Mich at 37. This is a two-prong test. *League of Women Voters*, ___ Mich ___, ___ n 26; slip op at p 14 n 26. The Court in *League of Women Voters*

-1-

focused on whether there would be a future controversy involving the specific parties to that case. However, the exception has historically been employed where a matter carries significance to persons other than the specific parties to the case but may evade judicial attention in the future. *Milford v People's Community Hosp Authority*, 380 Mich 49, 55-56; 155 NW2d 835 (1968); *People v Kaczmarek*, 464 Mich 478, 481; 628 NW2d 484 (2001). In the absence of a clear pronouncement, I would not infer from our Supreme Court's opinion in *League of Women Voters* that the Court intended to craft a new rule drastically narrowing the scope of the "capable of repetition yet evading judicial review" exception to mootness. Rather, the Court appears simply to have been addressing the particulars of the case before it. Thus, we unanimously agree that the first half of the test is satisfied: the issue in this matter is likely to recur.

The majority concludes that this kind of issue is not likely to evade judicial review because it is only by happenstance that the issue has become moot in this case. I respectfully disagree. Michigan courts have tended to apply or refuse to apply the exception to mootness depending on whether the party seeking appeal or the party opposing appeal has done something affirmative (or has the ability to do so) to render the appeal moot for the purpose of precluding further review. See *Richmond*, 486 Mich at 37-41.[1] The fact that this issue became moot by happenstance simply precludes that line of reasoning. Indeed, in the situation of a parole hearing, our Supreme Court expressly applied the exception to mootness precisely *because* the underlying proceedings might come to an end before the matter could be judicially reviewed. *Kaczmarek*, 464 Mich at 481. The majority aptly observes that it is not uncommon for child protective proceedings to be protracted. Nevertheless, the goal is to achieve stability and safety for the child within a reasonable time, and a parent motivated to seek vaccination for a child would likely also be motivated to undertake whatever must be done to achieve reunification. It may well be that a similar dispute will *eventually* drag on long enough. However, I find that line of reasoning unpersuasive.

"[W]hen our courts are entrusted with safeguarding the interests of minor children," it is especially important to take care not to apply preclusion doctrines in the interest of "lighten[ing] the loads" of the courts.[2] *In re Bibi Guardianship*, 315 Mich App 323, 335-336; 890 NW2d 387 (2016). Whether the issue is custody, termination, or adoption, "unquestionably, the focus of Michigan law is to advance the best interests of the children." *In re MJG*, 320 Mich App 310, 316; 906 NW2d 815 (2017). Vaccination can have both immediate and lifelong consequences. A child cannot be "unvaccinated" if they receive a vaccination contrary to a parent's objection; simultaneously, a child cannot be "unkilled" if they die as a result of an infection that a timely vaccination could have prevented.[3] The old saying that "justice delayed is justice denied" has

---

[1] The United States Supreme Court recognizes a similar rule, but regards it as equitable. See *Azar v Garza*, ___ US ___; 138 S Ct 1790, 1792-1793; 201 L Ed 2d 118 (2018).

[2] I do not mean to suggest that the majority is intentionally seeking to shirk its duties, but only that I believe its analysis is inappropriately narrow for the circumstances.

[3] It is, after all, possible for the situation in the instant matter to be inverted: an adjudicated parent might object to vaccination while the unadjudicated parent does not. Because by default vaccination is mandatory, MCL 333.9205, the majority's holding essentially guarantees that such

medical reality here: children might suffer permanent health consequences that could render an appeal moot for entirely different, and far more tragic, reasons. Our Supreme Court indicated that a need for "dispatch" does not inherently require invocation of the exception to mootness. *League of Women Voters*, ___ Mich at ___ n 26, slip op at pp 14-15 n 26. However, our Supreme Court seemingly trusted that the class of cases before it would actually receive that dispatch—yet, here we are, more than a year after a dispute as to vaccination was first raised as an issue, and almost half a year after we granted leave in this matter. This does not inspire the same degree of faith that future disputes of this nature will, in fact, "receive a timely decision on the merits." *Id*.

Put most simply, the exception to mootness for issues of public importance that are capable of repetition yet evading review does not have as high of a threshold as the majority appears to believe, and nothing in *League of Women Voters* has altered the law on point. The possibility that an inevitable similar issue might someday manage to survive long enough to be judicially reviewed is not the dispositive analysis. Rather, the dispositive analysis is whether it is likely that a future vaccination dispute between an adjudicated and an unadjudicated parent involving a child under the jurisdiction of a court will *not* reach judicial review. The pendency of the instant matter, the need for vaccinations or decisions regarding vaccinations to be made timely, and the potential dire or irreversible consequences of failing to make such a decision strongly suggest a likely repeat performance of the instant situation. I believe the majority reads more into *League of Women Voters* than our Supreme Court intended, and I would apply the exception to mootness here.[4]

Therefore, I find it necessary to substantively address the issues presented.

## II. VACCINATIONS AND EXEMPTIONS

By default, children are required to receive vaccinations in this state under the Public Health Code:

> A parent, guardian, or person in loco parentis of a child shall provide for the child's immunization by an authorized health professional, physician, local health department, clinic, or other agency offering immunizations for diseases and within an age period prescribed by the department. [MCL 333.9205.]

However, there are two exceptions, only one of which is relevant in this matter:

> A child is exempt from this part if a parent, guardian, or person in loco parentis of the child presents a written statement to the administrator of the child's school or operator of the group program to the effect that the requirements of this part cannot

---

an inverted situation will *never* receive appellate review until it is "too late" if, as occurred here, the trial court simply defers to the unadjudicated parent *per se*.

[4] I share the majority's concern over the failure of petitioner, the LGAL, and SMS to participate in this appeal. However, I am not persuaded that is an adequate reason under the circumstances to refrain from addressing the issues, which are at this point mostly legal.

be met because of religious convictions or other objection to immunization. [MCL 333.9215(2).]

As noted by the majority, SMS invoked the above exception, stating, "I have religion and disbelief of the vaccinations." SMS has not been adjudicated as an unfit parent, so the trial court believed it was unable to order the child vaccinated, despite agreement by respondent-mother, the LGAL, petitioner, and even the trial court that doing so would be in the child's best interests.

## III. PARENTAL RIGHTS AFTER BEING ADJUDICATED

"Child protective proceedings are governed by the juvenile code, MCL 712A.1 *et seq*., and Subchapter 3.900 of the Michigan Court Rules." *In re Ferranti*, 504 Mich 1, 14; 934 NW2d 610 (2019). Child protective proceedings occur in two phases: an adjudicative phase and a dispositional phase. *In re Sanders*, 495 Mich 394, 404; 852 NW2d 524 (2014). An unadjudicated parent enjoys extensive constitutional rights to direct the care, control, and custody of the parent's children. *Id*. at 409-410. An adjudication permits the state to overrule a parent's directives based on the state's own determination of the child's needs. *Id*. at 405-406; *In re Deng*, 314 Mich App 615, 626-627; 887 NW2d 445 (2016). However, an adjudication as to one parent does not empower the trial court to interfere with the rights of a non-adjudicated parent. *Sanders*, 495 Mich at 421-422.

This Court summarized the consequences of adjudication as, "the [adjudicated] parent will be unable to control the care and custody of his or her child." *In re Pederson Minors*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 349881), slip op at p 11 (CAMERON, J). More fully,

> the court gains broad powers to enter orders for the welfare of the child and the interests of society and make decisions regarding a host of issues that would normally fall to the parent to decide, including the ability to decide the child's placement, order medical care or other healthcare for the child, provide clothing and other incidental items as necessary, order compliance with case service plans, allow parental visitation with the child, enter orders affecting adults, and, more generally, enter orders that the court considers necessary for the interests of the child. [*Deng*, 314 Mich App at 626-627.]

Thus, after an adjudication, the trial court then "can exercise its *parens patriae* authority" over the child. *Sanders*, 495 Mich at 404. Put another way, "[t]he adjudication divests the [adjudicated] parent of her constitutional right to parent her child and gives the state that authority instead." *Ferranti*, 504 Mich at 16.

However, none of the above cases appear to compel the conclusion that an adjudicated parent's rights just disappear. "The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State." *Santosky v Kramer*, 455 US 745, 753; 102 S Ct 1388; 71 L Ed 2d 599 (1982). An adjudicated parent retains at least some due process rights. See *In re Rood*, 483 Mich 73, 109-111 (CORRIGAN, J), 125 (CAVANAGH, J); 763 NW2d 587 (2009). "There is no reason to conclude that a parent has a diminished

constitutional right to his child merely because he does not have physical custody of that child." *Id*. at 121 (CORRIGAN, J), citing *Santosky*, 455 US at 753. Rather, the adjudicated parent is simply no longer presumed to be acting in the child's best interests. *Sanders*, 495 Mich at 416-418. Thus, the adjudicated parent may not dictate to the trial court whether to have the child vaccinated. Nevertheless, it does not follow that the adjudicated parent's wishes become irrelevant. Put another way, an adjudicated parent loses the *right* to make decisions for his or her child, but that does not mean the trial court is absolutely forbidden to *permit* an adjudicated parent—as a matter of discretion and grace—to continue having some say in the child's life.[5]

"If the court acquires jurisdiction, the dispositional phase determines what action, if any, will be taken on behalf of the child. Substantial effort is expended to improve the home situation in order to return children to the custody of their parents if at all possible." *In re Brock*, 442 Mich 101, 108; 499 NW2d 752 (1993). "[T]he interest of the state as parens patriae is for the welfare of the child." *Id*. at 112-113. To that end, the juvenile code should

> be liberally construed so that each juvenile coming within the court's jurisdiction receives the care, guidance, and control, preferably in his or her own home, conducive to the juvenile's welfare and the best interest of the state. If a juvenile is removed from the control of his or her parents, the juvenile shall be placed in care as nearly as possible equivalent to the care that should have been given to the juvenile by his or her parents. [MCL 712A.1(3).]

The trial court has discretion to remove the child from the home or leave the child in the home. MCR 3.965(B)(12), (13)(a); *Sanders*, 495 Mich at 405. It appears implicit that the trial court has discretion to decide *how much* interference is appropriate under the circumstances, and MCL 712A.1(3) strongly suggests a public policy of exercising as little interference as feasible.

Additionally, the Latin term "parens patriae" was derived from its use in chancery proceedings "to describe the power of the state to act in loco parentis for the purpose of protecting the property interests and the person of the child." *In re Gault*, 387 US 1, 16; 87 S Ct 1428; 18 L Ed 2d 527 (1967), abrogation in part on other grounds recognized in *Allen v Illinois*, 478 US 364, 372-373; 106 S Ct 2988; 92 L Ed 2d 296 (1986). By statute, a "person in loco parentis of" a child is both obligated to vaccinate the child and empowered to object to vaccinations for religious reasons. MCL 333.9205; MCL 333.9215(2). The term "in loco parentis" is not defined in the Public Health Code.[6] The term "in loco parentis" has been understood generally as referring to a

---

[5] Indeed, the trial court in this matter ordered that respondent-mother should be able to participate in the child's medical appointments.

[6] The term is defined in the Mental Health Code as "an individual who is not the parent or guardian of a child or minor but who has legal custody of the child or minor and is providing support and care for the child or minor," MCL 330.1260(1)(f); or "a person who is not the parent or guardian of a minor, but who has either legal custody of a minor or physical custody of a minor and is providing support and care for the minor," MCL 330.1498c(a). However, in general, terms defined

temporary assumption of the duties, character, or function of a lawful parent. See *Mayberry v Prior*, 422 Mich 579, 584; 374 NW2d 683 (1985); *Hush v Devilbiss Co*, 77 Mich App 639, 649 n 1; 259 NW2d 170 (1977).[7] Assumption of parental functions has been held to constitute assumption of parental duties. See *People v Thomas*, 85 Mich App 618, 624; 272 NW2d 157 (1978).

The trial court does not micromanage every detail of the child's care, nor could it. However, the court clearly assumes many parental functions, and thus many parental responsibilities, even if it does so partly by delegation. Indeed, "the court may enter orders that govern all matters of care for the child," including medical decisions and essentially any other matter the court deems necessary. *Deng*, 314 Mich App at 624-627 (internal quotation omitted). Thus, it appears that, when a trial court takes jurisdiction over a child, the trial court *de facto* becomes a "person in loco parentis of the child" within the meaning of the Public Health Code. The trial court is therefore *obligated* under MCL 333.9205 to ensure that the child receives the vaccinations required by law, and, strictly speaking, also empowered under MCL 333.9215(2) to object to vaccination on religious or other grounds.[8]

This Court reached a parallel conclusion in *Deng* that the trial court's broad authority to enter dispositional orders in the best interest of a child within its jurisdiction included the authority to order a child vaccinated contrary to the religious objection of a parent. *Deng*, 314 Mich App at 625-629. However, *Deng* is not controlling as to the issue at bar, because in *Deng*, both parents had been adjudicated. *Id*. at 618. Thus, both parents were subject to the trial court's dispositional power under the juvenile code. Consequently, the trial court's authority in *Deng* to order the child vaccinated was premised on a straightforward application of MCL 712A.18(1)(f), which plainly confers upon the court power to enter orders providing medical care for a child within its jurisdiction. This Court in *Deng* had no reason to consider the extent of a trial court's power to

---

in one statutory scheme should not be blindly applied to a different statutory scheme. See *Grimes v Dep't of Transp*, 475 Mich 72, 85; 715 NW2d 275 (2006).

[7] In addition, our Supreme Court has described the probate court as standing in loco parentis as to person under a guardianship, reasoning that such persons were actually wards of the court, the "guardian was the medium through whom the court acted," and guardians were required to "invoke the aid or consent of the court" to undertake some actions. *Andrews v Bassett*, 92 Mich 449, 451-453; 51 NW 743 (1892). Although *Andrews* did not involve a child, I believe the same general principle should apply in child protective proceedings by analogy.

[8] As noted above, the situation in the case at bar could easily be inverted: an adjudicated parent might object to vaccination on religious grounds, while the unadjudicated parent does not. Nothing in this opinion should be construed as a holding that it is impossible for a trial court to conclude that it would be in the child's best interests to uphold that religious objection. Alternatively, the trial court might conclude that the other exemption, under which a physician certifies that a particular immunization would be inappropriate or unhealthy for the child, should apply. See MCL 333.9215(1). Nevertheless, by default, vaccination is mandatory, MCL 333.9205, and therefore presumptively appropriate unless the trial court affirmatively concludes that an exemption should apply.

make medical decisions for a child where only one parent is subject to its dispositional power and the other parent is not.

I conclude that, after taking jurisdiction over a child, the trial court may either: (1) exercise its discretion to permit the adjudicated parent to continue making some or all medical decisions for the child, including whether to vaccinate the child; or (2) act as "a person in loco parentis of the child" in the stead of the adjudicated parent for purposes of vaccinations under the Public Health Code. To hold otherwise would, in effect, mean that an adjudicated parent's rights have been abolished rather than merely suspended, the trial court could be unilaterally deprived of its discretion and obligation to enter orders in the best interests of the child, and the unadjudicated parent could unilaterally undermine an adjudicated parent's ability to comply with a safety or treatment plan. Clearly, the fact that an unadjudicated parent is not subject to the trial court's dispositional power under the juvenile code necessarily means the trial court's power to enter orders is curbed if the unadjudicated parent disagrees with a dispositional order. However, the trial court erred in determining that it was completely powerless to act.

## IV. TRIAL COURT'S POWERS *IN LOCO PARENTIS*

To partially summarize the preceding discussion, adjudication is not termination. Until the adjudicated parent's parental rights are actually terminated, those rights still exist, and in the trial court's discretionary assessment of the child's best interests, some of those rights may continue to be exercised by the parent; or, if not, the trial court becomes obligated to exercise those rights in the adjudicated parent's stead. Indeed, our Supreme Court has indicated that where a child is made a ward of the court, the court becomes obligated to safeguard the child's interests, even if doing so contravenes an agreement by the parents. *West v West*, 241 Mich 679, 683-684, 685-686; 217 NW 924 (1928).

Nevertheless, the trial court's assumption of jurisdiction over a child does not subject an unadjudicated parent to the court's dispositional authority under the juvenile code. *Sanders*, 495 Mich at 421-422; *In re Kanjia*, 308 Mich App 660, 666-667; 866 NW2d 862 (2014). Thus, the trial court is not empowered to unilaterally order a child immunized, whether at the adjudicated parent's request or on its own initiative. Rather, the unadjudicated parent clearly also has a right to object to immunization under MCL 333.9215(2). I conclude that although the trial court may not subject an unadjudicated parent to its dispositional authority under the juvenile code, the trial court is obligated to resolve that dispute under the Child Custody Act.

Where both parents are adjudicated, the trial court simply has the power to enter orders in the best interests of the child. See *Deng*, 314 Mich App at 628-629. Where neither parent is adjudicated and the parents share legal custody, the trial court becomes obligated to step in and resolve a dispute between those two parents as to important decisions affecting the child's welfare. *Pierron v Pierron*, 486 Mich 81, 85-86; 782 NW2d 480 (2010); *Lombardo v Lombardo*, 202 Mich App 151, 159; 507 NW2d 788 (1993). In resolving such a dispute, the trial court must do so in

the best interests of the children, upon express consideration of the statutory best interests factors in MCL 722.23. *Pierron*, 486 Mich at 91;[9] *Lombardo*, 202 Mich App at 160.

Our Supreme Court has held that "[t]he Child Custody Act 'applies to all circuit court child custody disputes and actions, whether original or incidental to other actions.' " *Pierron*, 486 Mich at 85, quoting MCL 722.26(1). A child custody dispute does not require the parties to seek judicial intervention. See *Phillips v Jordan*, 241 Mich App 17, 23 n 1; 614 NW2d 183 (2000). Rather, a child custody dispute can arise within the context of some other proceeding.[10] See MCL 722.27. Although the term "child custody dispute" is not defined by statute, this Court has defined it as "any matter that relates to the custody of a child from the time the issue of custody arises until the child reaches the age of majority," *Phillips*, 241 Mich App at 23 n 1; or "any number if situations or actions wherein the placement of a child must be determined." *Nelson v Kendrick*, 187 Mich App 367, 370; 466 NW2d 402 (1991).[11]

Notably, however, such a dispute may include educational decisions that do not necessarily affect a child's physical placement or "custodial environment." See *Pierron*, 486 Mich at 93; *Lombardo*, 202 Mich App at 159-160. It may potentially entail "all matters relating to the child's welfare and upbringing." *Phillips*, 241 Mich App at 23 n 1. Although vaccination might not seem to directly affect a child's placement, medical decisions in general certainly could. A choice of a particular doctor, therapist, or other medical professional may likewise involve a child's placement. As noted above, vaccinations can have both immediate and lifelong health consequences—and a child's death should not be a traditional way of affecting "placement," but effectively does so nonetheless. Thus, vaccinations are of a *class of* decisions—specifically, significant medical decisions—that clearly fall under the category of "custodial disputes."

The consequence is that a dispute between two parents as to vaccination of a child necessarily implicates the Child Custody Act. Such a conclusion does not implicate attempting to impermissibly subject an unadjudicated parent to its dispositional authority under the juvenile code.[12] Rather, adjudication of one parent obligates the trial court to step into that parent's shoes

---

[9] The *Pierron* Court emphasized that although the trial court must consider and make specific findings as to all of the statutory best-interest factors, such a finding could be simply that any particular factor was irrelevant under the circumstances. *Pierron*, 486 Mich at 91.

[10] I do not think the Child Custody Act was intended to permit state intervention into every disagreement between parents over any aspect of child-rearing, certainly not unbidden; but I think it important that the trial court was expressly asked to resolve the instant vaccination dispute.

[11] At the time *Nelson* was decided, the Child Custody Act did contain a partial definition of "child custody dispute," but that definition was only applicable to grandparent visitation issues. *Nelson*, 187 Mich App at 370-371. The quotation from *Nelson* addressed the term "child custody dispute" as used in the remainder of the Child Custody Act.

[12] I note as an aside that even if unadjudicated parents are not subject to *dispositional* authority under the juvenile code, they are not necessarily "untouchable." In particular, the juvenile code appears to give trial courts some power over "any other person" pursuant to MCL 712A.18(1)(g).

as a person in loco parentis of the child or to grant that parent some ability to continue making decisions for the child. The trial court may not unilaterally enter dispositional orders affecting the unadjudicated parent, but the trial court has both the power and the obligation to act as if it were a parent within the meaning of the Child Custody Act. In other words: where the trial court (or the adjudicated parent exercising a parental right with the trial court's permission) disagrees with an unadjudicated parent as to a medical decision, the trial court must therefore resolve that disagreement pursuant to the Child Custody Act. Notably, everyone involved in the child's life and in this case other than the father agreed that the child should be vaccinated.

Therefore, the trial court must hold a hearing and make findings as to the best interest factors under MCL 722.23. In addition, MCL 712A.18(4) would also seem to hold that parents are entitled to proper notice and an opportunity to be heard. Importantly, the trial court's assessment of the child's best interests under the juvenile code is significantly distinguishable from the trial court's assessment of the child's best interests under the Child Custody Act, because the latter specifically mandates a comparative analysis and requires numerous express factual findings. See *In re COH, ERH, JRG, & KBH*, 495 Mich 184, 205; 848 NW2d 107 (2014).

To be clear, the trial court cannot unilaterally order a child under its jurisdiction vaccinated pursuant to its powers under the juvenile code if an unadjudicated parent objects to vaccination. However, unless the trial court affirmatively concludes that one of the vaccination exemptions found in MCL 333.9215 should apply, either pursuant to its role as a person in loco parentis of the child or at the request of either parent, the trial court must resolve whether to order the child vaccinated under the Child Custody Act. The trial court is obligated to make a determination of the best interests of the child after explicitly considering all of the statutory best interests factors. Doing so does not impermissibly subject the unadjudicated parent to the dispositional authority of the trial court under the juvenile code; rather, the unadjudicated parent is entitled to the same rights he or she would have in the event of a dispute between two unadjudicated parents. I believe our Supreme Court's rejection of the one-parent doctrine in *Sanders* was intended to be used as a shield; not, as SMS is attempting to do here, as a sword.

## V. CONCLUSION

The trial court correctly recognized that it lacked the power under the juvenile code to order the child vaccinated contrary to the religious objection made by an unadjudicated parent. However, the trial court erred by failing to recognize that it was obligated to make a determination under the Child Custody Act of whether vaccination is in the best interests of the child and then order the child vaccinated or not vaccinated accordingly. The trial court therefore abused its discretion by operating under the wrong legal framework and by failing to exercise discretion when called upon to do so. However, because this matter is moot as to this child and as between these parties, we must leave the trial court's order undisturbed.

/s/ Amy Ronayne Krause

---

See *In re Macomber*, 436 Mich 386, 390-400; 461 NW2d 671 (1990). However, I also note that MCL 712A.18(1)(g) has a limited scope, which I think renders it inapplicable to this matter.