*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

BRIAN ROBERT MORROW,

        Defendant-Appellant.

FOR PUBLICATION
December 11, 2025
8:43 AM

No. 370335
Berrien Circuit Court
LC No. 2022-001561-FC

Before: M. J. KELLY, P.J., and REDFORD and FEENEY, JJ.

FEENEY, J.

Defendant appeals by leave granted[1] his *nolo contendere* conviction of second-degree murder, MCL 750.317. The trial court sentenced defendant to serve 22 to 50 years in prison. On appeal, defendant challenges the trial court's denial to withdraw his plea. We affirm.

## I. FACTS

This case arises from defendant's neglect of the eight-year-old child, who died in May 2022, of starvation and malnutrition.[2] Defendant was charged with: (1) first-degree murder committed in the perpetration of first-degree child abuse (felony murder), MCL 750.316(1)(b);

---

[1] This Court originally denied the defendant's leave to appeal. *People v Morrow*, unpublished order of the Court of Appeals, entered June 18, 2024 (Docket No. 370335). But the Michigan Supreme Court later remanded this case to our Court "for consideration as on leave granted." *People v Morrow*, 14 NW3d 409 (Mich, 2024).

[2] On appeal, defendant denies that he is the biological or legal father of the child, although defendant acknowledges that the issue of paternity was not raised during the trial court proceedings. Nonetheless, even if defendant was not the child's biological or legal father, he had a legal duty to care for the child because he "directly and voluntarily assumed a parental function, and stood in a position of Loco parentis to the [child]" by being married to the child's mother and living with the child and the child's mother. See *People v Thomas*, 85 Mich App 618, 624; 272 NW2d 157 (1978).

and (2) possession of methamphetamine, MCL 333.7403(2)(b)(*i*). Pursuant to plea negotiations, defendant pleaded *nolo contendere* to second-degree murder, MCL 750.317, and the methamphetamine charge was dismissed.

To support the factual basis for defendant's no-contest plea, the trial court read the following facts from the probable-cause sheet:

[Officers] were called to 705 Columbia Avenue in the city of St. Joseph, Berrien County, Michigan, on May 3rd, 2022 for what was determined to be a suspicious situation.

A grandmother . . . had called with regard to her grandson, [the child], who was now deceased inside the residence. When the officers arrived on scene, they did find [the child], who was eight years old at the time, deceased in the home. The mother of the child was identified . . . .[3] The father was identified as the Defendant in this matter, Brian Morrow.

The police noted—received information from the mother . . . that the child the last several days had not been eating or drinking, and would throw up. She indicated that her son, [the child], was severely autistic. She also gave the police information that he was having breathing problems during that timeframe overnight of May 2nd, 2022. [The child's mother] also stated that [the child] only weighed 40 pounds.

[The child's mother] indicated to the police that she and Brian Morrow, the Defendant, were aware that [the child] was now deceased, that he had died, and they carried him to the couch prior to the police's arrival. The probable cause sheet indicates that [the child's mother] and [defendant] are married, and that they are the biological parents of [the child], again age eight.

During the investigation in this matter, it was revealed that Child[ren's] Protective Services [(CPS)] was involved several times with [the child]. However, they did not take any action. The investigation was that [the child] was last going to the LOGAN Center, which is a center for autism, and last attended that center on November 1st, 2021. He was last seen by a health—with a health professional on November 9th, 2021. At that time he weighed 43 pounds.

He was seen because he was vomiting frequently and swallowing his vomit. He was referred to a gastroenterologist and was scheduled to have a procedure done at Bronson Gastroenterology. He needed to have a COVID test done prior to that procedure, and the parents, including the Defendant in this matter, never took [the

---

[3] The child's mother was also charged and convicted in this matter, but she is not a party to this appeal.

child] to have that COVID test, so he was not able to have the procedure recommended by the doctor to address his condition.

There was an autopsy on [the child] on May 4th, 2022. The medical examiner noted that [the child's] body and his health was consistent with neglect and malnourishment. They were pending some toxicology, but the medical examiner noted that [the child]—at the time of the autopsy, [the child] weighed 31 pounds at that time. There was information—sorry, counsel. I thought there was some information in here about—there is information in here about his weight being 43 pounds as of November 9th, 2021, and then again on May 4th, 2022 his weight being 31 pounds at the time of the autopsy.

The police did talk with the Defendant in this matter, Brian Morrow, who acknowledged that [the child] died May 2nd, and that he did not call the police because he wanted to allow his wife to have time with [the child]. [Defendant] noted that [the child] would eat his own feces and spread it throughout the house. The investigation also revealed a room that the Defendant called a chill room that had a padlock on the door, that had a number of substances, including numerous items containing methamphetamine in that room.

They also—the police also interviewed the daughter of Brian Morrow, the Defendant, on May 4th . . . . She used to live at the address at 705 Columbia Avenue. She indicated the last time she—time she saw [the child], he was discolored and his face was sunken in. He was so skinny you could put your finger around his arms. She also noted that her—that Brian Morrow, the Defendant, and [the child's mother], were using methamphetamine.

The People at LOGAN Center indicated that [the child] had a lot of no-calls/no-shows. The employees there did express concerns over his health because he threw up several times, including up to 200 times a day. They noticed that he began to smell like urine and his skin started to get loose. They were concerned about his health and knew that he was not being taken to a doctor. His last day at that center is noted as November 1st, 2021.

The medical records for [the child] were obtained, showing that on February 7th, 2014, [the child] weighed 22 pounds and was in the 99th percentile for his weight. On March 30th, 2015, he weighed 37 pounds and was in the 99th percentile for his weight. Again noted on May 17th, 2021, he weighed 37 pounds and was in the 1 percentile for his weight. The police also noted that in the room of the Defendant and his wife, [the child's mother], there was a walk-in closet that had a lock on the outside, and that inside that room were—the closet were items like Gatorade bottles, which [the child] loved, blankets, sheets, forks, and human hair, consistent with a person staying in there.

Both the Defendant and [the child's mother] advised the police that [the child] would be in a lot—in their room a lot. The Defendant admitted to CPS that he and the mother had smoked meth two days prior to [the child's] death. It's clear

-3-

from the probable cause sheet that the mother and father both lived with the Defendant—excuse me, the victim at that address, and were present in his life at the time of his death.

Defendant later moved to either withdraw his plea or compel the prosecutor to produce sufficient additional facts to support it. Defendant argued that first-degree child abuse and second-degree murder both required an affirmative act that seriously harmed the victim, and because the facts presented to the trial court merely indicated that the child's death was caused by defendant's omission or failure to act, there was an insufficient factual basis for either felony murder or second-degree murder, rending defendant's plea invalid. The trial court denied defendant's motion. Defendant now appeals.

## II. PLEA WITHDRAWAL

On appeal, defendant argues that the trial court abused its discretion by denying his motion to withdraw his plea because first-degree child abuse and second-degree murder both require an affirmative act that seriously harmed the victim, and in this case, the facts merely indicated that the child's death was caused by defendant's omission or failure to act. We disagree.

### A. PRESERVATION AND STANDARD OF REVIEW

Defendant preserved this issue by moving to withdraw his no-contest plea for the same reasons that he raises on appeal. See *People v Kaczorowski*, 190 Mich App 165, 172; 475 NW2d 861 (1991). "We review for an abuse of discretion a trial court's ruling on a motion to withdraw a plea." *People v Moss*, 509 Mich 253, 259; 984 NW2d 23 (2022) (quotation marks and citation omitted). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *People v Duncan*, 494 Mich 713, 722-723; 835 NW2d 399 (2013). "We review de novo questions of law, such as the interpretation and application of statutes." *Moss*, 509 Mich at 259.

### B. ANALYSIS

A trial court must grant a motion to withdraw a plea "[i]f the trial court determines that there was an error in the plea proceeding that would entitle the defendant to have the plea set aside . . . ." See MCR 6.310(C)(3). A valid plea must be "understanding, voluntary, and accurate." MCR 6.302(A). For a *nolo contendere* plea to be accurate, the trial court must hold a hearing "that establishes support for a finding that the defendant is guilty of the offense charged or the offense to which the defendant is pleading." MCR 6.302(D)(2)(b).

As previously stated, the offense charged in this case was first-degree murder committed in the perpetration of first-degree child abuse (felony murder), MCL 750.316(1)(b), and defendant pleaded no contest to second-degree murder, MCL 750.317. Second-degree murder requires a death caused by the defendant, with malice and without justification or excuse. *People v Gafken*, 510 Mich 503, 511; 990 NW2d 826 (2022). In defendant's case, first-degree murder requires each element of both second-degree murder and first-degree child abuse. MCL 750.316(1)(b); *People v Aaron*, 409 Mich 672, 725; 299 NW2d 304 (1980) ("[S]econd-degree murder is a necessarily lesser included offense of first-degree murder").

## 1. SECOND-DEGREE MURDER BY OMISSION

Defendant first argues that a defendant must perform an affirmative action to be guilty of second-degree murder. We disagree.

"Manslaughter is a necessarily included lesser offense of murder," and "the *sole* element distinguishing manslaughter and murder is malice . . . ." *People v Gillis*, 474 Mich 105, 137-138; 712 NW2d 419 (2006) (quotation marks and citation omitted; emphasis added). When parents fail to adequately feed their child, resulting in the child's death by malnourishment, the parents may be charged with manslaughter if the prosecutor presents evidence of the following:

> the existence of a legal duty, defendants' knowledge of the duty, that defendants willfully neglected or refused to perform said duty, that such failure was grossly negligent of human life, and that death was caused by defendants' failure to perform their duty. A finding of gross negligence requires evidence that defendants had knowledge of the danger their failure to act would cause the child, the ability to avoid the harm, and that they failed to use care and diligence to prevent the danger when, to the ordinary mind, it must have been apparent that the result was likely to cause harm to the child. [*People v Giddings*, 169 Mich App 631, 634; 426 NW2d 732 (1988).]

Although homicide by a defendant's omission to perform a legal duty is often charged as manslaughter, it may rise to the level of murder in certain circumstances. See *People v Lynch*, 47 Mich App 8, 16 n 7; 208 NW2d 656 (1973). Specifically, murder requires malice, i.e., "an intent to kill, an intent to commit great bodily harm, or an intent to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result." *People v Mendoza*, 468 Mich 527, 540; 664 NW2d 685 (2003). This Court has held that "starvation or other omissions, when coupled with evidence of the appropriate intent, may rise to the level of second-degree murder," but "proof of death by starvation, standing alone, is insufficient to infer the element of malice necessary to sustain a bindover for second-degree murder." *Giddings*, 169 Mich App at 634. To prove the required state of mind, the prosecutor may rely on circumstantial evidence and reasonable inferences. *People v Unger*, 278 Mich App 210, 223; 749 NW2d 272 (2008).

On appeal, defendant emphasizes that our Supreme Court often describes second-degree murder as requiring the following: "(1) a death, (2) the death was *caused by an act of the defendant*, (3) the defendant acted with malice, and (4) the defendant did not have lawful justification or excuse for causing the death." *People v Smith*, 478 Mich 64, 70; 731 NW2d 411 (2007) (emphasis added). But in *People v Yeager*, 511 Mich 478, 489; 999 NW2d 490 (2023) (quotation marks and citation omitted; emphasis added), our Supreme Court recently stated that murder requires "a death, *caused by defendant*, with either an intent to kill, an intent to commit great bodily harm, or an intent to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result." Accordingly, the Court did not indicate that the defendant must perform an affirmative action to be guilty of murder, just that the defendant must have caused the death. See *id*. Therefore, when courts use the term "act" to describe the elements of second-degree murder, that language should not be read to exclude an omission that otherwise meets the requirements for murder.

In this case, the facts supported a finding that defendant was guilty of second-degree murder because there was evidence for each element of manslaughter, plus malice.

Regarding the elements of manslaughter, the facts and inferences drawn therefrom established that: (1) defendant had a legal duty to care for the child; (2) defendant knew of that duty because, in addition to it being common knowledge, CPS contacted defendant in the past regarding his care of the child; (3) defendant's failure to care for the child was grossly negligent because the child was obviously extremely ill, as observed by multiple childcare and healthcare professionals, family members, and defendant himself; and (4) the child died of malnourishment caused by defendant's neglect. See *Giddings*, 169 Mich App at 634. Accordingly, there was evidence for each element of manslaughter.

There was also evidence—beyond the child's proof of death—that supported an inference of malice. The child weighed just 31 pounds at the time of his death, despite being eight years old. He threw up frequently and would eat his own vomit and feces. He was discolored, smelled of urine, and had loose skin. He did not eat or drink for several days leading up to his death, and he had breathing problems on the night of his death. His declining health was obvious and graphic, occurring over a period of months. Defendant's failure to feed the child or seek medical attention supported the inference that defendant intended "to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result." *Yeager*, 511 Mich at 489. Therefore, a sufficient factual basis supported defendant's plea for second-degree murder. See *id*.

Because the facts supported a finding that defendant was guilty of the offense that he pleaded to, the trial court did not abuse its discretion by denying defendant's motion to withdraw his plea. See MCR 6.302(D)(2)(b). Nonetheless, we will address defendant's alternative argument for the sake of completeness and clarity.

### 2. FELONY MURDER BY OMISSION

Defendant further argues that there was an insufficient basis to support a finding that he was guilty of first-degree felony murder because the underlying felony— first-degree child abuse— cannot be committed by an omission. We disagree.

### a. FIRST-DEGREE CHILD ABUSE

MCL 750.136b(2) governs first-degree child abuse and states, in pertinent part, as follows: "A person is guilty of child abuse in the first degree if the person knowingly or intentionally causes serious physical harm or serious mental harm to a child."

As with any question of statutory interpretation, we begin with the plain language, examining individual words and phrases in the context of the statute as a whole. *People v Pinkney*, 501 Mich 259, 268; 912 NW2d 535 (2018). Accordingly, we look to the statute's definition of second-degree child abuse, which provides, in relevant part, as follows:

> A person is guilty of child abuse in the second degree if any of the following apply:

(a) The person's omission causes serious physical harm or serious mental harm to a child or if the person's reckless act causes serious physical harm or serious mental harm to a child.

(b) The person knowingly or intentionally commits an act likely to cause serious physical harm or mental harm to a child regardless of whether harm results.

(c) The person knowingly or intentionally commits an act that is cruel to a child regardless of whether harm results. [MCL 750.136b(3).]

Furthermore, within this statutory scheme, an "omission" is defined as "a willful failure to provide food, clothing, or shelter necessary for a child's welfare or willful abandonment of a child." MCL 750.136b(1)(c).

A panel of this Court previously interpreted and applied these statutes in *People v Maison*, unpublished per curiam opinion of the Court of Appeals, issued November 7, 2017 (Docket Nos. 332162; 332164).[4] In *Maison*, unpub op at 1, the "[d]efendants, husband and wife, were charged with and convicted of torture, first-degree child abuse, and felony-murder with respect to the husband's five-year-old daughter from a prior relationship and of torture and first-degree child abuse with respect to the husband's three-year old daughter from a prior relationship." "Essentially, both girls were deprived of food, water and medical attention, and suffered from malnutrition and dehydration which, in the five-year old's case, also led to severe pneumonia and caused her death." *Id*. The facts surrounding the deceased five-year old child's condition are as follows:

[She] was suffering from pneumonia, severe malnourishment, and severe irritation in her vaginal and anal area that was bloody at the time of her death, yet defendants did not seek medical treatment for her. According to both paramedics responding to the home, [the child's] vaginal area was red, inflamed, and, according to one, "a dried bloody mess." All who saw her described her appearance as emaciated, extremely thin and gaunt, or variations thereof, and medical records clearly established that [the child] had been losing weight in the two years prior to her death. Defendants' expert testified that [the child] was neglected and malnourished. And, both Dr. Spitz and the emergency room doctor who attended [the child] testified that she had likely been dead for a while before defendants called 911. [*Id*. at 3-4.]

When holding that "first-degree child abuse does not require an affirmative act and may be committed by an omission," the *Maison* panel explained as follows:

The second degree child abuse statutes, MCL 750.136b(3)(b) and (c), both require that the defendant "knowingly or intentionally commits an act." MCL 750.136b(2),

---

[4] Although unpublished "opinions are not binding precedent on this Court, we may consider them as instructive or persuasive." *People v Jamison*, 292 Mich App 440, 445; 807 NW2d 427 (2011). See MCR 7.215(C)(1).

[the first-degree child abuse statute], on the other hand requires only that the defendant "knowingly or intentionally causes serious physical or serious mental harm to a child." The Legislature's failure to use the term "act" in the first-degree child abuse statute indicates that first-degree child abuse can be committed by an omission. [*Id*. at 4.]

The panel concluded that the deceased child's "obviously emaciated state and lack of medical attention allows for an inference that defendants willfully failed to provide food and care necessary for her welfare." *Id.*

On appeal, defendant argues that the panel in *Maison* incorrectly held that first-degree child abuse may be committed by an omission because the statute already requires that an omission be a *willful* failure to provide food, which implies that the deprivation of food was knowing and intentional. See MCL 750.136b(1)(c). Therefore, in defendant's view, any omission punishable as second-degree child abuse would automatically be punishable as first-degree child abuse. But the key distinction between first-degree and second-degree child abuse is whether the defendant intended the harm itself, not whether the defendant intended the act or omission that caused the serious harm. *People v Todd*, 196 Mich App 357, 361; 492 NW2d 521 (1992), vacated on other grounds 441 Mich 922 (1993). In other words, both first-degree and second-degree child abuse may be committed by omission, but MCL 750.136b(2) is a specific intent crime, whereas MCL 750.136b(3)(a) is a general intent crime. *Id.*

Furthermore, the first-degree child abuse statute cannot be read to require an affirmative act because it would contradict the plain language of the statute's definition of third-degree child abuse, which uses the same "knowingly or intentionally causes" phrase:

> A person is guilty of child abuse in the third degree if any of the following apply:
>
> (a) The person knowingly or intentionally causes physical harm to a child.
>
> (b) The person knowingly or intentionally commits an act that under the circumstances poses an unreasonable risk of harm or injury to a child, and the act results in physical harm to a child. [MCL 750.136b(5).]

Defendant's argument would result in interpreting MCL 750.136b(5)(a) as: "The person knowingly or intentionally [commits an act that] causes physical harm to a child." In that scenario, both Subsections (5)(a) and (5)(b) would require a knowing or intentional act and physical harm to a child, rendering Subsection (5)(b)'s additional requirement—that the act poses an unreasonable risk of harm or injury to a child—irrelevant. This interpretation runs contrary to the principle that "[c]ourts must give effect to every word, phrase, and clause in a statute and avoid an interpretation that would render any part of the statute surplusage or nugatory." *State Farm Fire & Cas Co v Old Republic Ins Co*, 466 Mich 142, 146; 644 NW2d 715 (2002). By contrast, the prior interpretation of the statute in *Maison*, unpub op at 4—that first-degree child abuse may be committed by an omission—is consistent with the plain language of the statute.

Although it does not discuss the difference between an act and omission, an example of first-degree child abuse by omission was recently discussed in *People v Welch*, unpublished

per curiam opinion of the Court of Appeals, issued November 10, 2022 (Docket No. 357501), which the trial court found highly persuasive and factually comparable to defendant's case. In *Welch*, unpub op at 1, the defendant was convicted of felony murder predicated on first-degree child abuse after the defendant's 10-month-old daughter was found dead at home from malnourishment. The child was visibly emaciated and had dried blood coming from her nose, foam coming from her mouth, and brown liquid dripping from her crib. *Id.* Evidence suggested that the defendant "was checking on his daughter through the peephole of her bedroom door (rather than actually going into the room), and . . . [that] he would not go near the peephole if things were quiet." *Id.* at 2. He also did not seek medical assistance for the child despite expressing concern about her weight. *Id.* The panel concluded that the evidence was sufficient to support a conviction of felony murder, holding that "a rational jury could reasonably infer from defendant's consistent disregard of his infant daughter's basic needs that defendant knowingly caused her death through malnourishment and dehydration." *Id.*

This case is comparable to *Maison* and *Welch* and clearly meets the standards for first-degree child abuse by omission. See *Welch*, unpub op at 1-2; *Maison*, unpub op at 3-4. In this case, defendant locked the child in an enclosed space and failed to provide food or seek medical attention for the child despite obvious signs of the child's declining health, which resulted in the child's death by malnourishment. Defendant's willful failure to provide food to the child constitutes an omission under MCL 750.136b(1)(c). This omission caused not just serious physical harm, but death. Given the child's extreme and obvious illness, one could reasonably infer that defendant knew that death would result from his continued failure to provide food. See *Welch*, unpub op at 1-2; *Maison*, unpub op at 3-4. Accordingly, these facts clearly satisfy the requirements of first-degree child abuse under MCL 750.136b(2).

## b. FELONY MURDER

Finally, defendant argues that even if he were guilty of first-degree child abuse by omission, a felony-murder conviction would require an additional affirmative act. We disagree.

As previously stated, first-degree murder in this case requires each element of both second-degree murder and first-degree child abuse. See MCL 750.316(1)(b); *Aaron*, 409 Mich at 725. The same act or omission "may support convictions for both first-degree child abuse and felony murder if the defendant acted with the requisite intent." *People v Jones*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 362854); slip op at 16. As previously discussed, the facts in this case supported a finding that defendant was guilty of both second-degree murder and first-degree child abuse. Therefore, nothing further was needed to create a factual basis to support a finding that defendant was guilty of felony murder, and the trial court did not abuse its discretion by denying defendant's motion to withdraw his plea. See MCR 6.302(D)(2)(b).

Affirmed.

/s/ Kathleen A. Feeney
/s/ Michael J. Kelly
/s/ James Robert Redford